JAMES LINDSAY v. STATE OF NEBRASKA.

46  177
53  345
54   98

FILED OCTOBER 15, 1895.   No. 7612.

1. **Criminal Law**: RULINGS ON MOTIONS: REVIEW. A ruling of the district court upon a question of fact presented by motion supported by affidavits will not be disturbed in the supreme court unless such ruling is clearly without support of sufficient evidence.

2. ———: ELECTION AS TO CASE IN WHICH A MOTION WAS FILED: REVIEW. On a motion made in the district court to compel an election as to whether the case in which the motion was made or another case involving a prosecution for the same offense in the same court should be dismissed, the ruling of the district court cannot be reviewed in the supreme court in the absence of a proper showing that in the district court there were in fact pending two cases of the nature indicated.

3. ———: HOMICIDE: TRIAL: MISCONDUCT OF BY-STANDERS: RE-PROOF: HARMLESS ERROR. During a trial on the charge of murder, where the mother of the deceased, without incitement thereto or responsibility therefor on the part of the prosecution, in the presence and hearing of the jury, charged the accused with having caused the death of her son, there is found no reversible error, since the record shows that the offender, with the prompt approval of the prosecuting attorney, was promptly by directions of the court removed from the court room, to which she did not return during the trial. Following *Debney v. State*, 45 Neb., 856, and *McMahon v. State*, 46 Neb., 166.

4. ———. MISCONDUCT OF PROSECUTING ATTORNEY: CONVERSATIONS WITH JURORS: HARMLESS ERROR. While the district

16

court might properly set aside the verdict of guilty on the mere showing that the prosecuting attorney, notwithstanding the instructions of the court forbidding conversation with jurors, had talked with one of them, yet where, upon a full disclosure of what was in fact said, and that it had no relation whatever to the subject-matter of the trial in progress, the district court overruled a motion for a new trial, such motion will not be disturbed in the supreme court.

ERROR to the district court for Cass county. Tried below before CHAPMAN, J.

The facts are stated by the commissioner.

*William F. Gurley* and *Beeson & Root*, for plaintiff in error:

The following cases are cited in support of the assignment that the court erred in overruling the motion for a change of venue: *Richmond v. State,* 16 Neb., 391; *State v. Crafton,* 56 N. W. Rep. [Ia.], 257.

The court should have compelled the county attorney to elect whether he would prosecute for prize-fighting or murder. (Criminal Code, sec. 435.)

The scene enacted in the court room during the trial by the mother of the deceased entitles accused to a new trial. (*Dower v. Church,* 21 W. Va., 55; *Coster v. Merest,* 3 Brod. & Bing. [Eng.], 272; *Knight v. Inhabitants of Freeport,* 13 Mass., 217; *Johnson v. Root,* 2 Clif. [U. S.], 108; *Heffron v. Gallupe,* 55 Me., 567.)

There was error in the statements of the prosecuting attorney. (*Hill v. State,* 42 Neb., 503; *Leahy v. State,* 31 Neb., 566; *Johnson v. Root,* 2 Clif. [U. S.], 108; *Cleveland Paper Co. v. Banks,* 15 Neb., 20.)

The judgment should be reversed for misconduct of counsel for the prosecution in communicating with members of the jury. (*Lyons v. Lawrence,* 12 Ill. App., 531; *Commonwealth v. Wormley,* 8 Gratt. [Va.], 712; *State v. Hascall,* 6 N. H., 352; *Springer v. State,* 34 Ga., 379; *Stafford v.*

*City of Oskaloosa*, 57 Ia., 748; *Veneman v. McCurtain*, 33 Neb., 643; *Gandy v. State*, 24 Neb., 727.)

There was error in the instructions for the following reasons: They were unnecessarily multiplied (*City of Lincoln v. Holmes*, 20 Neb., 39); the meaning was obscure (*Omaha Street R. Co. v. Craig*, 39 Neb., 601); they failed to present all the issues (*Carruth v. Harris*, 41 Neb., 789); some stating abstract propositions of law were prejudicial (*Vollmer v. State*, 24 Neb., 838; *Ballard v. State*, 19 Neb., 609; *Runge v. Brown*, 23 Neb., 817); they withdrew questions of fact from the jury (*Heldt v. State*, 20 Neb., 493; *People v. Dick*, 32 Cal., 216; *People v. Casey*, 65 Cal., 260; *State v. Mackey*, 12 Ore., 154; *State v. Whitney*, 7 Ore., 386; *Dolan v. State*, 44 Neb., 643.)

*A. S. Churchill*, Attorney General, *George A. Day*, Deputy Attorney General, and *C. S. Polk*, for the state :

The motion for a change of venue was properly overruled. (Criminal Code, sec. 455; *State v. Crinklaw*, 40 Neb., 759; *Smith v. State*, 4 Neb., 286; *Olive v. State*, 11 Neb., 1; *State v. Dunn*, 53 Ia., 526; *State v. Williams*, 63 Ia., 135; *State v. Perigo*, 70 Ia., 661; *State v. Beck*, 73 Ia., 616; *Perrin v. State*, 81 Wis., 135; *State v. Rowland*, 72 Ia., 327; *King v. State*, 20 S. W. Rep. [Tenn.], 169; *Horn v. State*, 13 So. Rep. [Ala.], 329; *Power v. People*, 28 Pac. Rep. [Colo.], 1121; *Muscoe v. Commonwealth*, 12 S. E. Rep. [Va.], 790; *State v. Lee*, 12 S. W. Rep. [Mo.], 254; *People v. Goldenson*, 19 Pac. Rep. [Cal.], 161; *Hasson v. Commonwealth*, 11 S. W. Rep. [Ky.], 286.)

The court did not err in overruling the accused's motion to require the prosecuting attorney to elect as to the information upon which he would proceed to trial. (*Commonwealth v. Bubser*, 80 Mass., 83; *Commonwealth v. Harrison*, 77 Mass., 308; *Commonwealth v. Bakeman*, 105 Mass., 53; *Commonwealth v. Harris*, 13 Allen [Mass.], 534; *State v. Standifer*, 5 Port. [Ala.], 523; *Commonwealth v. An-*

*drews,* 2 Mass., 408; *Vaughan v. Commonwealth,* 2 Va. Cases, 273; *Teat v. State,* 24 Am. Rep. [Miss.], 708.)

The conduct of the mother of deceased in the presence of the jury during the trial is not sufficient ground for reversal in view of the action of the court in reference thereto. (*State v. Dusenberry,* 20 S. W. Rep. [Mo.], 461; *State v. Laxton,* 78 N. Car., 564.)

Prejudice to accused did not result from misconduct of the jury or officers of the court. (*State v. Craig,* 43 N. W. Rep. [Ia.], 462; *State v. Richmond,* 7 So. Rep. [La.], 459; *State v. Bellow,* 7 So. Rep. [La.], 782; *State v. Harper,* 7 S. E. Rep. [N. Car.], 730; *Bailey v. State,* 9 S. W. Rep. [Tex.], 270; *Boyett v. State,* 9 S. W. Rep. [Tex.], 275; *Commonwealth v. Gagle,* 18 N. E. Rep. [Mass.], 417; *Territory v. Clayton,* 19 Pac. Rep. [Mont.], 293; *People v. Yut Ling,* 16 Pac. Rep. [Cal.], 489; *Prewit v. State,* 4 So. Rep. [Miss.], 346; *State v. Peyton,* 2 S. W. Rep. [Mo.], 394; *State v. Collins,* 86 Mo., 250; *Territory v. Hart,* 7 Mont., 489.)

To sustain the instructions the following cases are cited: *Carleton v. State,* 43 Neb., 373; *Seville v. State,* 49 O. St., 117.

RYAN, C.

Plaintiff in error was convicted of manslaughter in the district court of Cass county. His term of imprisonment in the penitentiary was by the judgment of the court fixed at two years. By mutual agreement the plaintiff in error and Fletcher Robbins engaged in an exhibition about midnight between August 9 and August 10, 1894. An entrance fee was charged for the privilege of witnessing the entertainment, and a prize of $200 was to be paid to the successful contestant. The prosecution insisted upon the trial that this contest was a prize fight. The defense described it as "a sparring match for scientific points." The accused, upon his cross-examination, when asked what

was boxing for scientific points, answered: "The men stand off and hit each other with the back of their gloves." It is not, perhaps, within the lines of the orderly discussion of this case now to say it, but we cannot forbear the present observation that whether the descriptive term of "prize fight" or the more euphonious designation "sparring for scientific points" is employed, one fact without question was established by the evidence, and that was that the accused caused the death of Fletcher Robbins.

In the brief submitted on behalf of the plaintiff in error the first proposition discussed, which has not already received incidental notice, is that the court erred in overruling the motion for a change of venue. Technically this ruling could be sustained upon the authority of *Olive v. State*, 11 Neb., 1, for the motion was in terms for a change of venue to the county of Otoe. We are mindful, however, that Otoe county and Cass county constitute the second judicial district, and that, therefore, if the motion had been made in the most approved form and had been sustained, the result would have been of necessity the same as though sustained in the form in which it was made. An examination of the affidavits submitted in support of the motion with those in opposition convinces us that this assignment is not well founded as a matter of fact, for nearly all the affirmative affidavits ascribed such prejudice as existed to the inhabitants of Plattsmouth, a city which is shown to contain but about one-fourth of the inhabitants of Cass county; and the negative affidavits fairly overcame the force of those in resistance of which they were filed.

The next contention for plaintiff in error relates to the refusal to compel the county attorney to elect whether he would prosecute upon the information in this case or for engaging in a prize fight charged, as was alleged in the motion, in another case pending in the same court. In the record we find no proof that such a prosecution as that last described was ever pending in the district court of Cass

county. The reliance of counsel apparently is upon that part of the motion which states: "Reference is hereby made to the records and files of the court in support of this motion." In *Lowe v. Riley*, 41 Neb., 812, it was held: "A bill of exceptions must contain all the evidence upon which questions of fact are to be determined, a reference in such bill to evidence to be found by reference to another bill filed in an independent case not being sufficient." On the same principle it is not proper to ask a ruling in this court upon a question of fact not presented by the record under consideration.

While the trial was in progress the mother and a sister of Fletcher Robbins were seated near and within sight of the jurors. The accused was called to the witness stand in his own behalf. Just as he took his seat the mother of the deceased suddenly arose and, stepping forward, pointed her finger at the prisoner in an excited manner and cried out, "You have killed my boy! You have killed my boy!" This is assigned as error because, first, it was permitted by the county attorney, and second, because it prevented a fair trial. In regard to the alleged remissness of the county attorney it is but fair to say that Mrs. Robbins had been told by him before the trial began that her attendance was not necessary; that he had no reason to expect that this lady would in any way interfere with the orderly course of the trial, and that, as soon as the scene above described took place, he joined the attorney for the prisoner in the request that Mrs. Robbins be removed from the court room. On the assignment that a fair trial was prevented it is proper to say that immediately after Mrs. Robbins used the language above quoted she was by direction of the presiding judge removed from the court room and was not again present during the trial. The language of Chief Justice Norval, in an opinion filed October 1, 1895, in *Debney v. State*, 46 Neb., 856, so well illustrates the rule which should govern the branch of the case under

consideration that without comment it is reproduced as fol-
lows: "It appears that at the close of the argument of the
county attorney to the jury the spectators applauded by
stamping of feet and clapping of hands, which applause
was immediately suppressed by the presiding judge, who
rebuked the persons for making the same. It was also
shown that the applause was without the knowledge or
connivance of those connected with the prosecution.   *   *
The incident complained of occurred in the presence and
hearing of the trial judge and he is better enabled than we
to determine the effect, if any, the applause had upon the
jury.   By overruling the motion for a new trial containing
an assignment relating thereto, submitted upon the affi-
davits both on behalf of the accused and the state, the
trial court must have been of the opinion that the demon-
stration was not of such a nature as to influence the ver-
dict, and no prejudice being shown its determination will
not be interfered with. (*Edney v. Baum*, 44 Neb., 294;
*State v. Dusenberry*, 20 S. W. Rep. [Mo.], 461.)" (See,
also, *McMahon v. State*, 46 Neb., 166.) The language
quoted is applicable to another error alleged, to-wit, that
the prosecuting attorney misquoted the testimony of one
of the witnesses as to the manner in which the accused
had managed to inflict injuries upon the person of the de-
ceased.

After the jury had been impaneled the court directed that
the jurors should not be permitted to separate or to commu-
nicate with outside parties except within the limitations
which, in that connection were prescribed, and were such as
were indispensable to arriving at and returning a verdict.
It is now insisted that the district court erred in refusing to
set aside the verdict upon the showing made in the motion
for a new trial.   There were minor violations of these in-
structions of the court urged, but as to them it is unneces-
sary to enter into an extended review of the evidence sub-
mitted, for it was insufficient to justify any disapproval of

the ruling complained of. The principal offense in this respect is imputed to E. H. Wooley, Esq., an attorney who assisted the county attorney in conducting the prosecution in the district court. As the misconduct alleged is charged against one of the managers of the prosecution, who, by reason of being a member of the bar, should not be permitted to urge ignorance as an excuse, it is deemed best to set out the evidence on this point at considerable length.

The plaintiff in error made affidavit that at about 11 o'clock P. M. of the day preceding that on which this cause was finally submitted to the jury the said affiant was upstairs in the Perkins Hotel at Plattsmouth; that upon request of his attorney he went down-stairs to the hotel office for some cigars; "that when affiant then came down-stairs at said hour he saw five of the jurymen before whom the above entitled cause was being tried; that affiant could not discover the whereabouts of the other seven members of said jury; that the said five members of said jury were sitting down in said office and engaged in conversation; that in the midst of the group composed of said jurymen was E. H. Wooley, prosecutor for the state in this case; that the said Wooley was talking, but what he said the affiant did not hear, nor did he hear what any of the said jurymen said."

The affidavit of Mr. Gurley, one of the attorneys for the accused, showed that when Mr. Lindsay was in affiant's room he was sent to the hotel office on an errand, " and that in about fifteen or twenty minutes defendant returned and stated to the affiant that five of the jurymen in said case, together with the deputy sheriff and E. H. Wooley, one of the attorneys for the prosecution, were seated down-stairs in the office of said hotel, apparently engaged in conversation; that defendant stated that he could not discover the whereabouts of the other jurymen."

This was all that was disclosed in the affidavits in support of the motion for a new trial with reference to the al-

leged misconduct of Mr. Wooley. In view of the fact that in a matter of this kind a presumption is more likely to arise against an attorney assisting in or conducting the prosecution than against a disinterested party, it is required that what really transpired should be set out as shown in the affidavits submitted for that purpose.

Mr. Wooley's counter-affidavit showed that between 10 and 11 o'clock of the night referred to in the affidavit of Mr. Lindsay, and in that of Mr. Gurley, he went to the Perkins Hotel, and having removed his hat and coat, "stepped near the stove for the purpose of warming himself; that there were present R. W. Hyers and several of the jurors that tried this case—affiant does not remember how many of said jurors were present; that said Hyers was a deputy sheriff or bailiff in charge of the jury; that affiant and John Adams engaged in conversation upon the subject of irrigation, the said Adams being six or eight feet distant from affiant, and that all of said conversation was audible to those present, and that not a word was said at that time, either by the affiant or any one else, regarding this case; that such conversation continued for a period of about ten minutes, when said Hyers took all the said jurors up to their room."

R. W. Hyers, in his affidavit, said that as deputy sheriff of Cass county he had charge of the jurors in this cause. His language in one part of the affidavit was as follows: "This affiant further states that during the whole time that he had charge of said jury no person whatever except the officers in charge of said jury ever spoke to any member of said jury on any subject whatsoever, except at one time when a few words passed between juror Adams and attorney Wooley on the subject of irrigation; that at no time was any person allowed to mingle with said jury, and at the time said Adams spoke to said Wooley they were not nearer than eight feet." In his affidavit Mr. Hyers stated that when the above conversation took place, five of the

jurors were present, having just returned from the water-closet with affiant, and that on their way back to their room these five jurors, with affiant, had stopped to warm themselves at the stove in the hotel office when the conversation between Mr. Wooley and Mr. Adams took place.

In respect to this conversation Mr. Adams in his affidavit stated that during the trial he had had no conversation on any subject "except on the evening of March 6, when a few of the jurors in charge of the deputy sheriff, R. W. Hyers, on returning from the water-closet, stopped a few moments at the stove of the hotel to warm themselves, and, while there, the said Hyers entered into a short conversation with attorney Wooley on the subject of irrigation, and while they were thus conversing the affiant addressed a few questions to them on the same subject; that this is the whole conversation had by the affiant with any one not a court officer in charge of the jury."

It is apparent to the most casual reader of these affidavits that there was no attempt to show by either Mr. Lindsay or Mr. Gurley what conversation took place between Mr. Wooley and any member of the jury. From the fact unexplained that an attorney for the prosecution, contrary to the directions of the court, conversed with one of these jurors the district court would be justified in setting aside the verdict of guilty afterwards returned. In this case, however, while Mr. Wooley should not so far have disregarded the instructions of the court as to converse with one of the jurors upon the most innocent subject, yet we cannot believe that this indiscretion should be fraught with consequences so serious as the reversal of the judgment of conviction when the conversation could have had no tendency to prejudice the right of the accused to a fair and impartial trial.

There are several criticisms of the instructions given and of those refused, but we are not able to discover substantial grounds for an inference of prejudice either from giving or

refusing instructions.  It is quite probable that nothing would have been lost, and something would have been gained, had fewer instructions been given.  Counsel for the accused presented every question possible in different forms and by repeated requests for instructions, and it was evidently to meet every phase presented that the numerous instructions were given.  In modifying such instructions as were modified there was no prejudicial change made, though, perhaps, in some instances the instructions might as well have been given as requested.  The judgment of the district court is

AFFIRMED.