## THE STATE v. GEORGE E. REITZE.

Argued February 18, 1914—Decided December 9, 1914.

1. The fact that the legislature has prohibited the further sale of liquor to a man already visibly under its influence, does not make an innkeeper who violates this prohibition and so renders his customer less able to stand securely, criminally responsible for the death of his customer, if the latter, by reason of his intoxication, falls, and in his fall receives injuries, which are fatal.

2. Where death is the result of an occurrence unanticipated by the defendant, but which arose from his negligence or inattention, his criminal responsibility depends on whether or not the injury which caused the death was the regular, natural and likely consequence of defendant's conduct; if it was not, then a charge of manslaughter cannot properly be laid against him.

On error to Hunterdon Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the state. *Richard S. Kuhl,* prosecutor of the pleas, and *Harry L. Stout.*

For the plaintiff in error, *George II. Large* and *H. Burdette Herr.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The writ of error in this case brings up the conviction of the defendant upon an indictment charging him with the crime of manslaughter, the person for whose death he was alleged to have been criminally responsible being one Thomas Welsh.

The material facts proved in the case were as follows:

Welsh and a friend named McCathern, called at the inn of Reitze, in the village of Whitehouse, about nine o'clock in the morning of the 7th of February, 1913, went into the barroom, and remained there until half-past twelve, during which

time they drank so much whiskey as to become, each of them, considerably intoxicated. At the end of that time they left the bar-room, went out through a pool-room (which was adjacent thereto) into the yard, and across the yard to the hotel sheds where Welsh had left his farm wagon and team. While attempting to get into the wagon by stepping upon the hub of the right front wheel, or the "lock block," Welsh slipped and fell, striking upon his back and fracturing his spine just below the base of the neck. From this injury he died a few weeks later.

We do not think that criminal liability on the part of the defendant for the death of Welsh can be predicated upon these facts. It is asserted by counsel for the state that, because the legislature has prohibited the further sale of liquor to a man who is already visibly under its influence, under pain of forfeiture of the vendor's license (*Comp. Stat., p.* 2907, § 83), an innkeeper who violates this prohibition and so renders his customer less able to stand securely, is legally chargeable with manslaughter if the customer by reason of his intoxication falls and in his fall receives injuries from which he dies. We cannot agree to this proposition. The fact that a drunken man is more likely to fall than a sober one must be admitted; but that sudden death is the usual or even the probable result of over-indulgence in intoxicating beverages must be denied. Common experience is to the contrary. If it shall ever become so, then excess in the use of strong drink will largely cease, or a very great increase in the death rate may be naturally expected. It is only for the natural and probable result of a wrongful act that a wrong-doer is liable, even civilly. And this is so, at least so far as criminal responsibility is concerned, even if the act is prohibited by the legislature, provided it be merely *malum prohibitum* and not *malum in se,* and is not dangerous in itself. *Estell* v. *State,* 51 *N. J. L.* 182. The sale of liquor within prohibited hours, or to a prohibited person in violation of a statute, is not inherently wrong. It is *malum prohibitum* and not *malum in se.* For the vending thereof, generally, is not only not considered by the law to be an immoral act, but is expressly au-

thorized by the law, upon condition that the vendors thereof shall first obtain a license to make such sales from designated legislative agencies.

It is further contended, on the part of the state, and was so charged to the jury, that, as the deceased was the guest of the defendant at the latter's hotel, it was the duty of the defendant to care for and protect him against danger; that he failed to perform this duty; that his failure in this regard was the producing cause of his guest's death; and that for this reason he was guilty of the charge laid against him if the jury should find (as they did find) that his failure exhibited gross and culpable negligence.

Just what particular act or series of acts it was considered the defendant should have performed for the protection of the decedent was not specified by the court in the charge to the jury nor by counsel for the state in the argument before us, and we are left in uncertainty, therefore, as to what it was that he was considered to have left undone that he ought to have done. If we are called upon to exercise our own ingenuity, we can perceive two courses which he might have adopted. He might have restrained Welsh of his liberty until he had sobered up, and taken the chances of an action for false imprisonment being brought against him; or he might have accompanied him to his wagon, safely ensconced him therein, and seen to it that no harm came to him so long as he was upon the hotel premises. Assuming that it was his duty to follow one or other of these courses, and that his failure to do so constituted negligence, how can it be said that such negligence exhibited criminal culpability? Criminal negligence has been defined as an act or omission, done or left undone, in reckless disregard of the life or safety of another. Perhaps that is not an accurate definition. However that may be, it is clear, as is said by Dr. Wharton, in his work on *Criminal Law* (section 1003), that where death is the result of an occurrence unanticipated by the defendant, but which arose from his negligence or inattention, his criminal responsibility depends on whether or not the injury which caused the death was the regular, natural and likely consequence of defendant's

conduct. If it was, then the defendant is subject to indictment. If it was not, he cannot be properly charged with a penal offence. Tested by this principle the impropriety of this prosecution and conviction is manifest; for, as we have already pointed out, there was no reason for the defendant to suppose that if he permitted the decedent to leave his premises, or allowed him to attempt to get into his wagon without assistance, serious or fatal injury to him was likely to be the consequence. It was neither natural nor probable that such a result would follow from this omission of duty by the defendant, even if such a duty as has been suggested rested upon him.

The judgment under review will be reversed.