## VOTRE *v.* STATE OF INDIANA.

[No. 24,088.    Filed March 8, 1923.]

1. HOMICIDE.—*Matters of Law.—Death Resulting from Drinking Intoxicants.*—The court cannot say as a matter of law that death is the usual or probable result of taking a drink of intoxicating liquor.  p. 686.

2. HOMICIDE.—*Involuntary Manslaughter.—Elements.*—To constitute the crime of involuntary manslaughter, there must be such legal relation between the commission of the unlawful act and the homicide that it logically follows that the homicide occurred as a concomitant part of the perpetration of, or in furtherance of an attempt to commit, the unlawful act; the death must be the natural result and the probable consequence of the commission of the unlawful act upon which the homicide is based.  p. 686.

3. HOMICIDE. — *Involuntary Manslaughter. — Evidence. — Sufficiency.*—In a prosecution for involuntary manslaughter, where deceased, who was suffering from diseases of the stomach, kidneys and other organs, died from an attack of heart disease following the drinking of whiskey given her by accused, evidence *held* insufficient to sustain a judgment of conviction.  p. 686.

From Howard Circuit Court; *William C. Overton,* Judge.

Prosecution by the State of Indiana against Charles Votre.  From a judgment of conviction, the defendant appeals.  *Reversed.*

*Joseph C. Herron,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

TRAVIS, C. J.—Appellant was charged with the crime of involuntary manslaughter.  He appeals from the judgment on the verdict.

Appellant, with three other men and two girls, spent one Sunday afternoon and evening in dancing and drinking a quart bottle of whiskey, purchased earlier in the day by two of the men, companions of appellant, and by them brought to the place where the party was held. The four men and one of the girls—the deceased—drank

all of the whiskey from the bottle that was consumed, and all of them became more or less intoxicated. The bottle of whiskey had been on a table, and during the time mentioned, several persons, who drank the whiskey, drank from the bottle, or from a glass into which whiskey had been poured. The girls mentioned were sisters. The one who did not drink, testified that the appellant had picked the bottle up and held it out to the deceased, and invited her to have a drink, and that the deceased took the bottle and took a small drink. This was the only instance shown by the evidence, in which the appellant was connected in any way with the offering of the liquor to the deceased. Thereafter one of the other men gave the deceased whiskey which he had poured into a glass from the bottle. Late in the afternoon the deceased became sick and unconscious, and died about midnight. She was of the age of sixteen years. One of the physicians who had attended her upon this occasion and just previous to her death, and who, after the death, held an autopsy, testified that the drinking of whiskey would not ordinarily cause death; and testified further that the death in this instance was caused by the diseased condition of the deceased, which resulted in an attack of heart disease, occasioned by alcoholic poisoning, from which she died. Further evidence was that she had diseases of the heart, stomach, kidneys, and all the social diseases to which the human body is subject, with all the lesions and inflamations of other organs naturally resulting therefrom.

Appellant filed a motion for a new trial, for the causes that the verdict of the jury is contrary to law, and is not sustained by sufficient evidence. The overruling of which motion is the only error assigned.

The court cannot say as a matter of law that death is the usual or probable result of taking a drink of in-

toxicating liquor. It is only for the natural or
1. probable result of a wrongful act that a
wrongdoer is liable.

To constitute the crime of manslaughter, there must
be such legal relation between the commission of the
unlawful act and the homicide that it logically
2. follows that the homicide occurred as a concomit-
ant part of the perpetration of, or in furtherance
of an attempt to commit, the unlawful act. Therefore
it follows that death must be the natural result and the
probable consequence of the commission of the unlaw-
ful act upon which the homicide is based. *Potter* v.
*State* (1904), 162 Ind. 213, 70 N. E. 129, 64 L. R. A.
942, 102 Am. St. 198, 1 Ann. Cas. 32; *Commonwealth* v.
*Adams* (1873), 114 Mass. 323, 19 Am. Rep. 362; *Thiele*
v. *State* (1921), 106 Nebr. 48, 182 N. W. 570, 15 A. L.
R. 237; *State* v. *Reitze* (1914), 86 N. J. Law 407, 92 Atl.
576; *Estell* v. *State* (1889), 51 N. J. Law 182, 17 Atl.
118; 1 Bishop, New Criminal Law §331; Foster, Crown
Law 259; 1 Hale, Pleas of the Crown (Eng.) p. [475];
*Rex* v. *Joseph Martin* (1827), 3 Car. & P. (Eng. 211)
531; *Regina* v. *Packard* (1841), Car. & Mar. (Eng.)
236, 245.

The evidence in the case at bar in relation to the prob-
able consequence of the unlawful act, while being slight,
is yet uncontradicted, to the effect that death is
3. not the probable consequence of the unlawful act
with which the defendant was charged in the
commission of this crime. Inasmuch as the death was
not the natural result or the probable consequence of
the commission of the unlawful act, it follows that the
evidence is insufficient to sustain the verdict; from
which conclusion it follows that the verdict is contrary
to law.

Judgment reversed with the instruction to grant a
new trial.