THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN P. MULCAHY, Plaintiff in Error.

*Opinion filed October 28, 1925.*

1. CRIMINAL LAW—*when manslaughter is committed in perpetration of unlawful act.* To convict a person of manslaughter for killing a person while in the commission of an unlawful act the State must show more than a mere coincidence of time and place between the wrongful act and the death, and it must show that the unlawful act was the proximate cause of the killing, or that there was such legal relation between the killing and the crime or unlawful act committed or attempted that the killing can be said to have occurred as a part of the perpetration of the crime or in furtherance of an attempt or purpose to commit it.

2. SAME—*what evidence and instruction are improper in prosecution of a police officer for manslaughter.* In a prosecution of a police officer for manslaughter committed as a result of the careless handling of a revolver while in a public place, evidence tending to show that the officer permitted gambling to go on in his presence at the time and allowed a drunken person to be put out without arresting him is not admissible where it has no connection with the homicide, and an instruction to the effect that it is unlawful to be intoxicated in a public place is improper unless limited to evidence, if any, of the intoxication of the officer himself.

3. SAME—*when the record must be free from error.* While errors in the admission of evidence or in the giving of instructions which are not of a prejudicial character will not justify a reversal of a judgment of conviction when the jury, acting reasonably on

the competent evidence and under proper instructions, could have reached no other conclusion, yet if the guilt of the accused is a close question on the facts, in order to sustain a conviction the record must be free from material and substantial error and the jury must be accurately instructed.

4. SAME—*possession of revolver by police officer while intoxicated is not unlawful—instruction.* The mere fact that a police officer becomes intoxicated while on duty does not render his possession of a revolver, which he usually carried, unlawful, although by becoming intoxicated he is guilty of a violation of law; and in a prosecution of such officer for manslaughter, an instruction that the officer was lawfully in possession of his revolver, should not be modified to read that such possession would be unlawful were the officer intoxicated.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

JOHN F. TYRRELL, (ELWYN E. LONG, and THOMAS E. SWANSON, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, VIRGIL L. BLANDING, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error (hereinafter called defendant) was indicted, tried and convicted in the criminal court of Cook county of involuntary manslaughter and sentenced to an indeterminate term in the penitentiary.

Defendant was a uniformed police officer of the city of Chicago patrolling a beat on Sixty-third street. On December 31, 1923, he went on patrol duty at eight o'clock in the evening and patrolled his beat until four o'clock A. M., January 1, 1924. In the course of his duty on this night, as upon previous nights, by direction of his superior officer he visited a Chinese-American restaurant or cabaret, at which place the deceased, Jennie Plarski, was employed as

a check-room clerk. Deceased had been acquainted with defendant for some time prior to the time of the tragedy and on the night in question asked him to meet her as she left work and escort her to a street car on Cottage Grove avenue, as she was afraid of assault by a colored man whom she had assisted in convicting and who she was informed had served his term and was at liberty. When deceased left her work at four o'clock in the morning she met defendant and he escorted her to Cottage Grove avenue. The thermometer registered 16 degrees below zero. Because of the great demand for cabs to take people from the various places of amusement throughout the city, the late hour and the intense cold, neither a cab nor a street car could be had, and deceased and defendant, after getting a lunch in a restaurant and going to one or two taxicab stands, went into a cigar store to get warm. This place of business was divided into two rooms by a partition, the front room containing a cigar stand and other furniture and the rear room containing several tables and a stove. Just behind the door and against the west wall was a small table, at which the deceased and defendant seated themselves, and it was at this table that the fatal shot was fired, resulting in the homicide for the commission of which defendant was convicted. Defendant was on the east side of the table, facing the wall, while deceased was on the north or west side of the table. While they were sitting at the table, talking, some patron of the place who was intoxicated raised a disturbance and the proprietor put him out, but before doing so took a revolver out of the disturber's pocket and placed it on the table back of where defendant was sitting. The deceased noticed the gun upon the table, and exclaimed, "Johnny, be careful! There is a gun behind you!" Thereupon defendant took his police revolver out of his pocket and cocked it, but seeing that the revolver was not in the hand of any person he attempted to ease the hammer down to a position of safety, and his testimony, which is not

contradicted, is: "I pulled the trigger and was releasing it and she made a jerk, and she says, 'Johnny! be careful!' and she made a jerk. I don't know whether she touched the revolver. It all happened so quickly I cannot understand it." The revolver was discharged, the bullet entering the body of the deceased, later causing her death. All the witnesses present at the time of the shooting testified that everything appeared to be friendly between defendant and the deceased. Defendant at all times maintained that the shooting was purely accidental, and while a statement of the deceased as to the circumstances of the shooting is in evidence, in her' statement she did not claim that the shooting was intentional or grossly negligent on the part of defendant.

It is conceded that defendant fired the shot resulting in the girl's death, and the only question for the jury to determine was whether or not the shot was fired under such circumstances as to constitute the crime of manslaughter. In the brief of defendant in error it is said, "The case is a close one on the facts."

Upon the trial the court allowed the State to prove, over the objection of defendant, that before and at the time of the shooting, in the room in which it took place and in the presence of defendant, an open gambling game of stud poker was being conducted. This evidence did not tend to prove or disprove whether the shooting was accidental or criminal, but it did tend to show that at that time defendant, who was a police officer, was violating the law by not arresting the offenders who were committing the crime of gambling in his presence. The court instructed the jury, in the language of the statute, that "manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a heat of passion caused by a provocation apparently sufficient to make the passion irresistible or involuntary in the commission of an unlaw-

ful act, or a lawful act without due caution or circumspection." The court also gave to the jury the following instruction:

"The court instructs the jury, in the language of the statute, that any intoxicated person found in any street, highway or public place, or so found disturbing the peace of the public, or of his own or any other family in any private building or place, shall for the first offense be fined not more than $5 and upon a subsequent conviction shall be fined not exceeding $25."

The admission of the evidence with reference to gambling and the giving of this instruction are assigned as error. This instruction should not have been given in this case without limiting it to the intoxication of the plaintiff in error. The jury hearing the evidence as to gambling committed in the presence of the officer, and the evidence that a drunken person disturbing the peace in the presence of the officer was not arrested by him, and then hearing these instructions, might easily be led to believe that at the time of the shooting defendant was in the commission of an unlawful act in failing to arrest offenders committing criminal offenses in his presence. While it may be stated generally that a homicide is committed in the perpetration of another crime when the accused, intending to commit some crime other than the homicide, is engaged in any one of the acts which such intent requires for its full execution, and while so engaged, and within the *res gestæ* of the intended crime and in consequence thereof, the killing results, (*Conrad* v. *State,* 75 Ohio St. 52,) to make such homicide unlawful by reason thereof it must appear that there was such legal relation between the killing and the crime committed or attempted that the killing can be said to have occurred as a part of the perpetration of the crime or in furtherance of an attempt or purpose to commit it. To convict one of manslaughter for killing a person while in the commission of an unlawful act the State must show

more than a mere coincidence of time and place between the wrongful act and the death. (*Maxom* v. *State of Wisconsin*, 187 N. W. 753.) It must also show that the unlawful act was the proximate cause of the killing. *State* v. *Long*, 108 Atl. 36; *State* v. *Weisengoff*, 85 W. Va. 271; *State* v. *Schaeffer*, 96 Ohio St. 215; *People* v. *Schwartz*, 183 N. W. 723; *Dixon* v. *State*, 61 So. 423.

In *Jackson* v. *State*, 127 N. E. 870, where it appeared that the killing was occasioned by the violation of a statute forbidding an excessive rate of speed in the operation of a motor vehicle, the court, in holding that the disobedience of the statute must have been the proximate cause of death, said: "The square question is raised here as to whether an accidental, unintentional killing of a person by another engaged in an unlawful act makes that person guilty of manslaughter under the statute, irrespective of any connection between the unlawful act and the unintentional killing, and it seems to this court that an analysis of the illogical and absurd results which would necessarily follow the recognition of such a rule will answer the query. For instance, if it be the law, as charged by the trial court in this case, that if the jury find the accused unintentionally struck and killed the decedent while engaged in an unlawful act, to-wit, operating his car at a greater rate of speed than fifteen miles per hour, they must find him guilty of manslaughter without reference to causation, then it must follow that if the accused had been violating any other valid statute, however unconnected with the death at the time of the unintentional killing, he would be guilty of manslaughter. For instance, it is a violation of a valid statute to operate a motor vehicle without having first registered same with the Secretary of State, * * * yet * * * should the driver of an automobile, while driving his car without first having registered it with the Secretary of State, * * * be so unfortunate as to unintentionally run over and kill a person who inadvertently or purposely projected himself in

318—22

front of the car, he would be guilty of manslaughter, for, clearly, it would be an unintentional killing by a person operating a car in the violation of a valid statute, and yet there would be no relationship between the violation of the statute and the death. The accident would have occurred just as surely had the motor vehicle been registered. * * * The proximate cause would have been the same in each case, although the result to the driver of the car would have been the appalling difference between criminal guilt and legal innocence."

The fact that defendant did not arrest the persons guilty of gaming nor the drunken disturber of the peace was not the proximate cause of the killing and had absolutely no connection therewith, and the admission of this evidence and the giving of the instruction to which exception is taken would have a natural tendency to mislead the jury and prejudice them against the defendant. While errors in the admission of evidence or in the giving of instructions which are not of a prejudicial character will not justify a reversal of a judgment of conviction when the jury, acting reasonably on the competent evidence and under proper instructions, could have reached no other conclusion, where the guilt of the accused is a close question on the facts, to sustain a conviction the record must be free from material and substantial error and the jury must be accurately instructed.

Defendant requested the court to instruct the jury as follows:

"The court instructs the jury that if they believe from the evidence that on the first day of January, A. D. 1924, the defendant, John P. Mulcahy, was a patrolman of the department of police of the city of Chicago, then he was lawfully in possession of a pistol or revolver, if the jury further believe that he was so armed."

The court refused to give this instruction to the jury as requested but modified it by adding thereto: "Provided,

however, that if the said John Mulcahy was intoxicated at the time of the shooting or engaged in the commission of an unlawful act, then he was not entitled at such time or under such circumstances to be in possession of a concealed revolver. Using intoxicating liquor or procuring it for the use and consumption of himself or another would at the time be the commission of an unlawful act within the meaning of this one instruction and concerning only the right to carry a concealed weapon."

At the time in question the following rule of the police department of the city of Chicago was in force and effect: "Although certain hours are allotted to the members of the active force for the performance of ordinary duties, they will be considered as being always on duty and must be prepared to respond immediately, day or night, on notice that their services are required." By statute the provision of the law as it existed at that time, prohibiting the carrying of concealed weapons upon the person, did not apply to policemen while engaged in the discharge of their official duties. It does not by any means follow that because a policeman engages in the commission of an unlawful act he may not at the same time be lawfully in possession of a pistol or revolver. A policeman may violate the motor vehicle speed law while in pursuit of a criminal, or, as sometimes happens, while upon duty may violate the law in accepting graft, but in neither case, nor in many other supposititious cases, if at the time of such violation he had on his person a revolver which was concealed, would he be guilty of carrying a concealed weapon nor would the possession of such revolver be unlawful. The mere fact of a police officer on duty becoming intoxicated would not render his possession of his revolver unlawful, although by becoming intoxicated he would be guilty of a violation of law. While defendant strenuously denies that at the time and place in question he drank any intoxicating liquor and that he has not drunk any such liquor since being gassed

in the World War in France, there is some evidence in the record tending to show that he did drink some liquor. From this instruction the jury might be led to believe that at the time and place in question he drank intoxicating liquor; that as he had a revolver concealed upon his person he was guilty of the unlawful act of carrying a concealed weapon; that the carrying of such concealed weapon was the proximate cause of the killing, and that the killing was for that reason manslaughter. The instruction was erroneous, prejudicial to defendant, and as his guilt is a close question upon the facts, giving it was reversible error.

For the errors in the admission of evidence and the giving and modification of instructions the judgment of conviction is reversed and the cause remanded to the criminal court of Cook county.           *Reversed and remanded.*