No. 41,280

THE STATE OF KANSAS, *Appellee,* v. ERNEST L. YOWELL, *Appellant.*

(336 P. 2d 841)

Opinion filed March 7, 1959.

*Russell Shultz,* of Wichita, argued the cause and was on the briefs for the appellant.

*Don Matlack,* Deputy County Attorney, argued the cause, and *John Anderson, Jr.,* Attorney General, *Robert E. Hoffman,* Assistant Attorney General, and *Keith Sanborn,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: The defendant, Ernest L. Yowell, was arrested, tried, convicted and sentenced on a charge of manslaughter in the fourth degree in violation of G. S. 1949, 21-420. He appeals from the overruling of his motion for a new trial and from the judgment.

The issues presented on appeal are of such nature that, except those essential for a proper understanding of what the case is about, the pictorial facts are of little consequence and can be highly summarized. Facts which can be classified as undisputed, under the evidence of record will first be stated.

On the morning of January 4, 1958, at about 7:30 a. m., defendant, whose license to drive a motor vehicle upon the public highways had been suspended pursuant to the laws of this state, was driving his automobile in a easterly direction on U. S. Highway 54 on the outskirts, but within the legal limits of the city of Wichita. The highway at that point was unposted and daytime speed limit was limited to seventy miles per hour. Mrs. Betty J.. Wise, a resident of Clearwater, was ahead of defendant and driving her automobile east on the same highway, enroute to Wichita. Defendant overtook Mrs. Wise and attempted to pass her automobile. In making this attempt he struck the rear end of the Wise car, just to the left of the center of such vehicle. The force of the collision caused hoods, fenders, lights and other portions of the two vehicles to fly through the air and from the point of impact the Wise car traveled one hundred sixty feet, passed over the south curb of the highway and struck a light pole, while the defendant's car traveled two hundred and ninety-five feet, notwithstanding the right front fender and bumper thereof had been driven back into the right front wheel, locking it so it could no longer turn. As a result of the collision Mrs. Wise was thrown from her car and sustained a brain concussion which resulted in her immediate death.

Nothing would be gained and we are not disposed to burden our reports with details of the evidence which we are required to classify as in dispute, because of defendant having testified as a witness in his own behalf. It suffices to say we have carefully reviewed the record and find ample substantial competent evidence on which the jury in reaching its verdict would have been warranted in finding that at the time of the accident the defendant was driving under the influence of intoxicating liquor, driving at a speed exceeding the lawful speed limit at the time and place in question, and driving at a rate of speed that was greater than reasonable and prudent under the circumstances. In this connection it is to be noted that in the information the commission of all three of such statutory delinquencies were assigned as grounds for charging defendant was operating his automobile in a culpably negligent manner and so caused his automobile to strike the vehicle driven by Betty J. Wise in such manner as to thereby result in her death.

Appellant first contends the court erred in refusing to strike certain allegations from the information. It may be said these claimed defects ran only to the form in which the various elements

of the offense are stated and that, so far as the abstract discloses, such objections to the information, which had not been previously attacked, were presented and argued to the trial court for the first time at the close of the state's evidence. This court has long been committed to the rule, supported by well-recognized legal treatises (27 Am. Jur., Indictments and Informations, 731, 732 § 187; 4 Wharton's Criminal Law and Procedure, 742 § 1881; 2 Wharton's Criminal Law and Procedure [10 Ed.], 1784 § 1324; Kelly's Criminal Law & Procedure [4th Ed.] 175 § 217), that complaints relating to formal defects in an information are waived in a criminal action by not objecting thereto in some appropriate manner in the preliminary stages of the proceeding, prior to the time of impaneling a jury to try the cause. See, *e. g., Rice v. The State,* 3 Kan. 141, 167; *The State v. Ashe,* 44 Kan. 84, 24 Pac. 72; *State v. Hupp,* 154 Kan. 410, 118 P. 2d 579.

In leaving this point it can be stated that even if questions raised with respect thereto were to be considered on the basis of merit their decision would result in no benefit to appellant. It has been determined that in a prosecution for manslaughter in the fourth degree it is proper to include in the information allegations setting forth the facts, relating to penal infractions of the law regulating traffic on the highway, relied on as the proximate cause of the death (*State v. Bowser,* 124 Kan. 556, 558, 261 Pac. 846; *State v. Spohr,* 171 Kan. 129, 130, 230 P. 2d 1013).

At the close of the trial the court instructed the jury in writing. Only one of the instructions is involved on appeal. It is instruction No. 3 which reads:

"The law of Kansas provides that the killing of a human being resulting from unlawful conduct such as driving after suspension and revocation of a driver's license, or driving while under the influence of intoxicating liquor, or driving beyond the lawful speed limit, or driving at a speed greater than was reasonable and prudent under the circumstances, shall be deemed manslaughter in the fourth degree, provided that the death would not have occurred except for the unlawful conduct. It is for the jury to determine whether the defendant was engaging in any unlawful conduct and whether the death would not have occurred except for such unlawful conduct.

"The law also provides that the killing of a human being resulting from conduct amounting to recklessness or a disregard of or indifference to life or the safety of others, although no harm may have been intended, shall be deemed manslaughter in the fourth degree provided that death would not have resulted except for such conduct. It is for the jury to determine whether the defendant was engaging in any such conduct and whether the death would not have occurred except for such conduct."

Appellant objected to the foregoing instruction before it was submitted to the jury. Specifically the grounds upon which he based his objections were raised by a motion to strike from such instruction (1) the allegations regarding suspension and revocation of a driver's license; (2) the allegations concerning the statutory speed limit, inasmuch as there was no evidence by which the jury could find he had exceeded such speed limit; and (3) the allegations concerning speed greater than was reasonable and prudent under the circumstances for the reason there was no evidence of speed hazard or circumstances.

Heretofore we have stated there was ample substantial competent evidence to warrant the jury in reaching its verdict upon objections, herein last above identified as (2) and (3), relating to matters of speed. It follows such objections lack merit and cannot be upheld. Thus, since appellant made no objection to the last paragraph of instruction No. 3 and contentions advanced with respect thereto by way of after thought in his brief are not here subject to review, it appears appellate review of such instruction is limited to portions thereof having to do "with unlawful conduct such as driving after suspension and revocation of a driver's license." This, of course, includes consideration of the last sentence of the first paragraph of the instruction as quoted.

In approaching the interesting and, we may add, the highly perplexing and important over-all question, to which we have just referred, we are constrained to state that appellant cites no. criminal cases whatsoever in support of his position the instruction is erroneous and relies solely upon two of our civil cases. On the other hand, not to be outdone, the appellee relies upon but one criminal case, i. e., *State v. Custer*, 129 Kan. 381, 282 Pac. 1071, and attempts to establish its position the entire instruction is good by a statement in its brief consisting of only fifteen lines.

Limited to portions of instruction No. 3, now under consideration, contentions advanced by appellant in support of his position the instruction is erroneous may be summarized in the following manner: (1) The court in effect, in such instruction, informed the jury that they could properly find that the death of Mrs. Wise resulted from the presence of the appellant upon the highway while his driver's license had been suspended. (2) The lack of a driver's license had nothing whatsoever to do with the circumstances surrounding the accident. (3) Had appellant had a driver's license that would not have avoided the involved accident. (4) Appel-

lant's driver's license suspension had no causal relationship whatsoever to the circumstances of the accident. (5) The fact that his license had been suspended did not and would not have constituted in and of itself actionable negligence or warranted recovery of damages in a civil action under Kansas decisions.

Appellee's contentions can best be stated by setting forth *in toto* the portion of its brief dealing with the subject now under consideration. They read:

"Instruction number three was based on the landmark case concerning fourth degree manslaughter committed by automobile. This case is *State v. Custer*, 129 Kan. 381. The first part of the instruction is based on Syllabus 4 by the court in that case. The instruction is amplified by adding what unlawful acts the state alleged the appellant committed. All of the allegations were supported by substantial evidence as is set forth elsewhere in this brief and in the appellee's counter abstract.

"The second part of that instruction is based on Syllabus 2 of the same opinion, adding to that syllabus the definition of recklessness as set forth in the opinion.

"In short, it is my contention that instruction number three was properly given as a statement of the law as expounded by this court in *State v. Custer*, supra."

Decision of the over-all issue involved will be simplified by summary disposition of as many of the foregoing contentions as may properly be disposed of in that manner.

So far as appellant is concerned it must be conceded that conclusions reached by him in his contentions Nos. 2, 3 and 4 are correct. The same is true of contention No. 5. See *e. g., Crawford v. Miller*, 163 Kan. 718, 721, 186 P. 2d 116; *Gabel v. Hanby*, 165 Kan. 116, 193 P. 2d 239; *In re Estate of Lloyd*, 178 Kan. 572, 576, 290 P. 2d 817; *Applegate v. Home Oil Co.*, 182 Kan. 655, 661, 324 P. 2d 203, holding that mere violations of the statute regulating traffic are not in and of themselves sufficient to make the driver of a motor vehicle guilty of actionable negligence and that to make him liable it must appear the violation, or violations, contributed to the injury and were the proximate cause thereof. So, it appears the only controversial questions raised by appellant with respect to the instruction now under consideration are those inherent in contention No. 1 as previously stated.

Turning to appellee's contentions it may be conceded that the first paragraph of instruction 3 was based on syllabus ¶ 4 of the landmark case of *State v. Custer*, 129 Kan. 381, 282 Pac. 1071, which reads:

"If death results from unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety, and the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law." (Syl. ¶ 4.)

And it must be admitted that such portion of the instruction is amplified by adding what unlawful acts the appellee alleged the appellant committed; and that all allegations so made by appellee, with respect to existing statutory violations at the time of the accident, were supported by substantial competent evidence. Even so it does not necessarily follow, as appellee contends, that when amplified as indicated, such paragraph of the instruction as given, constituted a full, complete and correct statement of the law as expounded by this court in *State v. Custer,* supra, under the facts and circumstances of the present case. This, we may add, is so because there Custer was charged with driving an automobile on a public highway at an unlawful rate of speed, thus causing the death of another on the highway (the unlawful act being the direct cause of the death) whereas—as here—he was not only charged with three acts of that character but also charged with an additional act, driving after suspension and revocation of a driver's license, all four of which acts were alleged to have so caused his automobile to strike another vehicle on a public highway and result in the death of Betty J. Wise. In this connection we pause to note, that in three of our subsequent decisions (*State v. Spohr,* 171 Kan. 129, 132, 230 P. 2d. 1013; *State v. Champ,* 172 Kan. 737, 242 P. 2d 1070; *State v. Gibler,* 182 Kan. 578, 322 P. 2d 829), involving prosecutions for manslaughter in the fourth degree, where the above stated rule of the Custer case is followed and quoted at length, it appears the only penal infractions in question involved acts having a direct or causal bearing on the collision resulting in death. It is still more interesting to note that of all the Kansas cases, listed in our statutory annotations and cited in Shepard's Citations, as involving criminal prosecutions under 21-420, since the Custer case (*State v. Pendleton,* 144 Kan. 410, 61 P. 2d 107; *State v. Townsend,* 146 Kan. 982, 73 P. 2d 1124; *State v. Gloyd,* 148 Kan. 706, 84 P. 2d 966; *State v. Phelps,* 151 Kan. 199, 97 P. 2d 1105, and 153 Kan. 337, 110 P. 2d 755; *State v. Carte,* 157 Kan. 139, 138 P. 2d 429, and 157 Kan. 673, 143 P. 2d 774; *State v. Spohr,* supra; *State v. Champ,* supra; *State v. Goetz,* 171 Kan. 703, 237 P. 2d 246; *State v. Dean,* 179 Kan. 24, 292 P. 2d 694; *State v. Gibler,* supra), not one is based on a charge or involves a claim that, in and of itself, driving after suspension and

revocation of a driver's license, as prohibited by G. S. 1949, 8-262.

From what has been heretofore stated it becomes obvious appellant's contentions respecting the sufficiency of the instruction raises questions of first impression in this jurisdiction. In their determination, keeping in mind that this court, under facts disclosing acts consisting of penal delinquencies which have a direct bearing on death resulting therefrom, is committed to the rule announced in syllabus ¶ 4 of the Custer case, it may be helpful to refer to decisions of other states touching the relationship of statutory violations to the cause of death in prosecutions for manslaughter.

At the outset, it goes without saying, that throughout the years there have been many voluntary manslaughter cases where the death was accompanied by the violation of some positive law. Whether the violator is guilty of manslaughter when he has violated such a law has long presented complex problems and the courts of the land have resorted to various lines of reasoning in order to reach a just and proper result. A review of these cases reveals several rules to which we shall presently refer.

One line of cases discusses the distinction between acts *malum prohibitum* and *malum in se*. See *Keller v. State*, 155 Tenn. 633, 299 S. W. 803; *Thiede v. State*, 106 Neb. 48, 53, 182 N. W. 570; *State v. Nichols*, 34 N. M. 639, 641, 288 Pac. 407; *Estell v. State*, 51 N. J. 182, 185, 186, 17 Atl. 118; *State v. Reitze*, 86 N. J. 407, 408, 409, 92 Atl. 576; *Maxon v. State*, 177 Wis. 379, 385, 187 N. W. 753.

The distinction made by the foregoing decisions is stated in *Keller v. State*, 155 Tenn. 633, 299 S. W. 803, where it is said:

". . . It was shown in *Holder v. The State*, supra, that a distinction was taken in the authorities in this connection between unlawful acts *malum prohibitum*, and unlawful acts *malum in se*. Acts of the former class do not supply the criminal intent necessary to render one punishable for a homicide, unless the killing be the natural or probable result of the act. Acts of the latter class, *malum in se*, do supply the criminal intent." (p. 636.)

The conclusion reached by such courts with respect to acts *malum prohibitum* is well-stated in *Thiede v. State*, 106 Neb. 48, 182 N. W. 570, where it is said:

"We believe the rule to be that, though the act, made unlawful by statute, is an act merely *malum prohibitum* and is ordinarily insufficient, still, when such an act is accompanied by negligence or further wrong, so as to be, in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others, then it may be sufficient to supply the wrongful intent essential

to criminal homicide, and, when such act results in the death of another, may constitute involuntary manslaughter.

"Such an unlawful act alone, unaccompanied by negligence, is insufficient. (Citing cases.)" (pp. 53, 54.)

The rule in many states is that a killing is manslaughter if the act prohibited by statute is the proximate cause of the death. See *The People v. Mulcahy*, 318 Ill. 332, 336, 337, 149 N. E. 266; *Jackson v. State*, 181 Ohio 152, 155-157, 127 N. E. 870; *State v. Nichols*, 34 N. M. 639, 641, 288 Pac. 407; *Blackburn v. State*, 203 Ind. 332, 335, 180 N. E. 180; *Dunville v. State*, 188 Ind. 373, 375, 376, 123 N. E. 689; *State v. Hupf*, 48 Del. 254, 265, 101 A 2d 355; *People v. Barnes*, 182 Mich. 179, 192-194, 199, 148 N. W. 400.

The rule and the reasons for its pronouncement are well illustrated in *State v. Hupf*, 48 Del. 254, 101 A 2d 355, by the following statement:

"We agree that by no means all the American authorities are in accord with the common-law rule. Some courts have imported into the law of involuntary manslaughter a distinction, in respect of unlawful acts, between one *malum prohibitum* and one *malum in se*. Such a distinction has never been recognized in our cases, and we see no reason to adopt it. To do so would be to introduce confusion and uncertainty into a rule of law now plain and understandable. There are no doubt many regulations applicable to motor vehicles the violation of which does not evince moral turpitude; but it does not seem too much to ask that the automobile driver be held to strict accountability for violation of regulations prescribed by the law-making power in the interest of public order and safety, if that violation is the cause of the death of another. A careful application by the court of the doctrine of proximate cause, and the common sense of the jury, should prevent any undue hardship in the enforcement of the common-law rule." (p. 265.)

And in *State v. Nichols*, 34 N. M. 639, 288 Pac. 407, which reads:

"It would, in our opinion, be ridiculous to say that any accidental killing resulting indirectly or remotely while committing an unlawful act is involuntary manslaughter. Our statutes make it unlawful for a person to drive an automobile without a red tail-light or without first having obtained a license. If, while committing such an unlawful act alone, a person is accidentally and unavoidably run over and killed, the unlawful act could have no bearing whatsoever upon the killing. Would any one contend that the driver be. guilty of involuntary manslaughter? Our statutes also make the carrying of a deadly weapon an unlawful act. What has the mere carrying of the deadly weapon to do with the unlawful killing of a person with said weapon? The mere carrying of the weapon unaccompanied by some other act or factor could not result in death. It is our opinion that our statute contemplates that the unlawful act must be the proximate cause of the homicide. In this view we are almost uniformly supported by textwriters and decisions throughout the United States." (p. 641.)

. Another rule is that some causal connection and/or legal relation between the commission of the unlawful act and the death must appear and that there must be more than a mere coincidence of time and place between the wrongful act and the death. For cases from courts adhering to this rule see *Thompson v. State of Florida,* 108 Fla. 370, 372, 146 So. 201; *Maxon v. State,* 177 Wis. 379, 385, 187 N. W. 753; *Votre v. State,* 192 Ind. 684, 685, 686, 138 N. E. 257; *The People v. Mulcahy,* 318 Ill. 332, 149 N. E. 266.

The basis for this rule is well-outlined in *Thompson v. The State of Florida,* 108 Fla. 370, 146 So. 201, where it is said:

"The rule of liability as to criminal and civil negligence is not the same. But in either case, where violation of a statute or ordinance is relied on to prove that there was negligence in the infliction of injuries or/ death, the *causal connection* between the violation of the statute or ordinance and the injury or death inflicted, must be established. And in criminal cases it must be established beyond a reasonable doubt. In this case it is not clear beyond a reasonable doubt that the mere violation of the state statute prohibiting the parking of motor vehicles on the highway (See Chapter 10186, Acts of 1925) caused the death of the driver of one of the colliding vehicles." (p. 372.)

And in the opinion of *Votre v. State,* 192 Ind. 684, 138 N. E. 257, which reads:

"The court cannot say as a matter of law that death is the usual or probable result of taking a drink of intoxicating liquor. It is only for the natural or probable result of a wrongful act that a wrongdoer is liable.

"To constitute the crime of manslaughter, there must be such legal relation between the commission of the unlawful act and the homicide that it logically follows that the homicide occurred as a concomitant part of the perpetration of, or in furtherance of an attempt to commit, the unlawful act. Therefore it follows that death must be the natural result and the probable consequence of the commission of the unlawful act upon which the homicide is based. (Citing cases.)" (pp. 685, 686.)

For a general statement of such rule see 3 Wharton's Criminal Law and Procedure 154 § 985 which states:

"It must be shown that the death must have been the natural and probable consequence of the negligent or unlawful act, and not the result of misadventure, or of an independent intervening cause, in which accused did not participate. There must be something more than a mere coincidence of time and place between the wrongful act and the death. . . ."

An additional rule is that if the defendant committed the unlawful act in question under conditions that were dangerous to the deceased, the criminality consisting of the two elements of the unlawfulness of the act and the unlawfulness and dangers in the mode

of its execution constitute manslaughter. (*Estell v. State*, 51 N. J. 182, 17 Atl. 118.) Another decision, dealing with the same subject, is *State v. DiLorenzo*, 138 Conn. 281, 83 A 2d 479.

For still another rule, particularly applicable in the instant case because the opinion of the case in which it is announced deals with a prosecution for manslaughter, based on operating an automobile without an operator's license, see *Commonwealth v. Piper*, 183 Pa. Super Ct. 229, 130 A 2d 195, where it is said:

"Operating an automobile without an operator's license, or permitting another without such license to operate one's automobile, does not alone make the parties guilty of involuntary manslaughter if the car is involved in a fatal accident. The unlawful act must be something more than a remote unit in a sequence of events culminating in a fatality, or an attendant condition without which the death could not have occurred; the death must be the natural result or probable consequence of the unlawful act. If the appellant was blameless except for the violation of Section 622 of the Motor Vehicle Code, *supra*, (requiring a driver's license) he was not guilty of involuntary manslaughter. (Citing cases.)" (p. 233.)

A decision of like import, both from the standpoint of facts and principles involved, as well as conclusions there reached, is *Commonwealth v. Williams*, 133 Pa. Super. Ct. 104,1 A 2d. 812.

In connection with the foregoing subject it should perhaps be stated that, in our extended review of the authorities, the two cases last above cited are the only reported appellate court decisions we have been able to find, dealing with prosecutions for manslaughter based on a statute making it unlawful to drive an automobile without an operator's and/or driver's license.

Once again directing attention to the rule in the Custer case, as directly applied to the case at bar, appellee's position, as we understand it, is that such rule must be construed as compelling a conclusion that, standing alone, the mere violation of 8-262, *supra*, which was conceded by appellant on cross-examination, followed by the death of Mrs. Wise as a result of the involved accident, was sufficient to convict appellant of manslaughter, as defined in 21-420; hence the trial court was warranted in instructing the jury the law of Kansas provides the killing of a human being resulting from unlawful conduct such as driving after suspension and revocation of a driver's license shall be deemed manslaughter in the fourth degree, provided that death would not have occurred except for such unlawful conduct.

Upon careful consideration and analysis of the opinion in the Custer case, the rule announced in syllabus ¶ 4 thereof, and the previously cited decisions from foreign jurisdictions, we are unable to agree with appellee's position on either of the two points last above mentioned.

With respect to the first of such points we believe the import to be given the rule announced in syllabus ¶ 4 of the Custer case, under what is there said, as well as what is held in other jurisdictions, is that, though the act, made unlawful by statute (here driving a motor vehicle on the highway after suspension and revocation of a driver's license in violation of 8-262, *supra*), is an act merely *malum prohibitum* and is ordinarily insufficient, still, when such an act is accompanied by negligence or further wrong, so as to be, in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others, then it may be sufficient to supply the wrongful intent essential to criminal homicide, and, when such act results in the death of another, may constitute manslaughter as defined in G. S. 1949, 21-420.

As to the second point, it may be conceded the giving of the instruction relating to "driving after suspension and revocation of a driver's license," in the manner set forth as last above indicated, would not have constituted error if it had not been challenged by appellant; for the reason that, as given, it was correct as an abstract statement of law under the rule of the Custer case. However, under the uncontroverted record, it was objected to in such a way as to direct the trial court's attention to the fact appellant was claiming that, since he had admitted suspension and revocation of his driver's license, the legal effect of such instruction, was to advise the jury it could convict him of manslaughter simply because he was driving on the highway at the time of the involved accident without a driver's license. We believe that under these circumstances there is merit to appellant's contention, previously referred to throughout this opinion as his contention (1). Moreover, we are convinced that, under the rule announced in the preceding paragraph of this opinion, the trial court, when faced by such objection, was required to amplify the portion of the instruction now under consideration by advising the jury as to the matters, heretofore stated in the preceding paragraph, such jury was required to consider before it could find the appellant guilty of manslaughter be-

cause of his violation of 8-262, *supra*; and that its failure to do so resulted in reversible error.

A final claim of error requires little attention. Before submission of the instructions appellant requested the court to give an instruction on negligent homicide as defined in G. S. 1949, 8-529. This request was refused and that ruling is assigned as error. Where —as here—the record discloses the evidence, even though weak and inconclusive, is conflicting with respect to the acts relied on as grounds for conviction in a prosecution for manslaughter under the provisions of G. S. 1949, 21-420, such a claim has merit and, under our decisions, must be upheld.

See *State v. Phelps*, 151 Kan. 199, 97 P. 2d 1105, where it is held:

"The record is examined in a criminal prosecution wherein the defendant was charged with causing the death of two persons in a highway collision resulting from his unlawful operation of an automobile, and it is held that under the facts stated in the opinion the failure of the trial court to instruct the jury concerning the offense of negligent homicide, as defined in section 8-529, G. S. 1937 Supp., was prejudicial error, even though request for such instruction was not made." (Syl. ¶ 3.)

For other decisions of like import see *State v. Gibler*, 182 Kan. 578, 322 P. 2d 829; *State v. Robinson*, 182 Kan. 505, 510, 322 P. 2d 767; *State v. Champ*, 172 Kan. 737, 740, 242 P. 2d 1070; *State v. Spohr*, 171 Kan. 129, 132, 133, 230 P. 2d 1013; *State v. Fouts*, 169 Kan. 686, 692, 221 P. 2d 841; *State v. Gloyd*, 148 Kan. 706, 84 P. 2d 966.

In view of what has been heretofore stated and held we are constrained to hold that error in the instructions complained of requires a reversal of the judgment and the remanding of the cause for a new trial.

. It is so ordered.