**UNITED STATES v. HARRISON et al.**

District Court, S. D. New York.
May 20, 1938.

WOOLSEY, District Judge.

The petition herein is in all respects denied.

I. Judge Knox has referred this petition to me as the sentencing Judge.

I have now had a chance of looking up the old records involved herein.

II. An examination of those records shows that on March 31, 1930, the petitioner, with two others, was indicted in this district under United States Criminal Code, § 218, title 18 United States Code, § 347, 18 U.S.C.A. § 347, which denounces and covers the several aspects of the offenses involved in counterfeiting United States money orders, and under United States Criminal Code, § 37, title 18 United States Code, § 88, 18 U.S.C.A. § 88, for conspiracy so to do.

Without going into all the details of the petitioner's criminal record, which extends back to 1911, and which was before me when he was sentenced, it will suffice for present purposes to state that on March 14, 1930, the petitioner was arrested on the charge of forging and passing money orders which had been stolen from Substations of the Post Office at Detroit, Michigan, in March 1930, and which had been subsequently filled out and passed in Detroit, Michigan; Buffalo, New York; Erie, Pennsylvania; Pittsburgh, Pennsylvania; Cleveland, Ohio; and New York City.

The petitioner and his confederates passed approximately $3,000 worth of forged money orders in New York City and within this district on March 10, 1930.

On March 14, 1930, when the petitioner was arrested for these crimes in Cleveland, Ohio, he tried to shoot the arresting officer, with the result that a woman bystander was seriously wounded and a man bystander was shot through the leg.

III. The United States Criminal Code, § 218, title 18 United States Code, § 347, 18 U.S.C.A. § 347, establishes several different offenses.

The indictment found in this district against the petitioner and his codefendants contained 31 counts.

A. Among its other provisions, section 218 of the United States Criminal Code denounces those who

"shall issue any money order or postal note without having previously received or paid the full amount of money payable therefor, with the purpose of fraudulently obtaining or receiving, or fraudulently enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any officer, employee, or agent thereof, any sum of money whatever."

The odd numbered counts up through 29 of the indictment charged offenses based on these provisions of section 218 of the United States Criminal Code.

B. Among its other provisions, section 218 of the United States Criminal Code denounces those who

"shall, with intent to defraud the United States, or any person, transmit or present to, or cause or procure to be transmitted or presented to, any officer or employee, or at any office of the Government of the United States, any money order or postal note, knowing the same to contain any forged or counterfeited signature to the same, or to any material indorsement, receipt, or certificate thereon, or material alteration therein unlawfully made, or to have been unlawfully issued without previous payment of the amount required to be paid upon such issue."

The even numbered counts through 30 of the indictment charged offenses based on this provision of section 218 of the United States Criminal Code.

C. Among its other provisions, section 218 of the United States Criminal Code denounces those who

"shall, with intent to defraud, pass, utter, or publish any such forged or altered money order or postal note, knowing any material signature or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made."

This aspect of section 218 of the United States Criminal Code is the basis of count 31 of the indictment, which is the conspiracy count.

Thus it is shown that the objective of the conspiracy charged in count 31 was a type of offense under section 218 of the United States Criminal Code different from the offenses charged in what are commonly known as the substantive counts of the indictment, namely, counts 1 to 30.

This is also true of the overt acts alleged, each of which set forth facts constituting an offense of this third type under section 218 of the United States Criminal Code.

D. It is the settled law that a conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy, United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211, and that this is so even where the substantive offenses charged are also charged as overt acts in the conspiracy. United States v. Wexler, 2 Cir., 79 F.2d 526, 528, certiorari denied 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991; Bell v. United States, 8 Cir., 2 F.2d 543, 544.

In the present case there is the additional difference above noted between the conspiracy count and the other counts consisting in the fact that the object of the conspiracy in the present case was stated to be a different offense from any charged in the first thirty counts.

Consequently, there was not conceivably any question of double jeopardy involved in the indictment herein.

IV. On January 6, 1931, when the petitioner pleaded guilty before me, he was serving a prison sentence in the Federal Penitentiary at Atlanta, Georgia, of nine years, imposed on him at Cleveland, Ohio, in May, 1930, for having there counterfeited and passed money orders stolen as were those in the indictment before me from Post Office Substations in Detroit.

It seemed to me that the best method of dealing with the situation was to impose

a sentence which would so overlap the nine year sentence commencing in May, 1930, which the petitioner was then serving, as to give him adequate punishment for the crimes committed in this district.

Accordingly I sentenced the petitioner to five years on Count 1, five years on Count 3, and two years on the Conspiracy Count 31, to run consecutively,—making a total of twelve years.

He was also sentenced to five years on each of the other counts, which sentences were suspended.

It was provided that all sentences were to date from January 6, 1931, except the sentences in Counts 3 and 31.

V. As the sentence of twelve years which I imposed commenced in 1931, and the sentence which the petitioner was then serving commenced in 1930, the sentence which I imposed overlapped his then current sentence by four years only, and, in my opinion, fitted the punishment to the crime with which I was dealing and to which the petitioner had pleaded guilty.

The petition refers to a sentence to be served after the expiration of the sentence which I imposed on the petitioner.

Inquiry through the Probation Office here brings me the information that the petitioner was sentenced for three years in Erie, Pennsylvania, and a year and a day in Pittsburgh, Pennsylvania, sentences to begin on the expiration of the sentence which I imposed.

VI. The grounds on which the petitioner bases his claim for the relief which he seeks are:

"That Count 31 of the indictment, charging conspiracy, is not valid, for the reason that it is insufficient, in that it does not conform to the statute governing that offense.

"That prosecution on Count 31 constitutes double jeopardy, as the offenses charged therein are incidents of or are identical with the offenses charged in the Counts 1 to 30, inclusive.

"That conviction on Counts 1 to 30, inclusive, needed every element of proof that was necessary for conviction on Count 31.

"That, therefore, conviction and sentence on Counts 1 to 30, inclusive, under these conditions, constituted a bar to prosecution on Count 31.

"That the sentence on Count 31 was therefore illegal, and the Court was therefore without the authority to impose it.

"That, under the law, petitioner has been sentenced in excess of the lawful authority of the Court.

"And that, the Court of original jurisdiction has power to declare the excessive portion of the sentence to be void or erroneous."

The petitioner's prayer is—

"Wherefore, the petitioner prays that this Court issue an order nunc pro tunc as of January 6, 1931, amending the sentence by striking therefrom the following: 'and two years on Count 31', causing the sentence to now read; with regard to imprisonment; 'Five years on Count 1 and five years on Count 3, to run consecutively. Total Sentence—Ten Years Imprisonment.'"

VII. The first reason why this petition must be denied is that this Court is wholly without jurisdiction after this lapse of time to give the relief sought because the term of Court at which the sentence was imposed has long since expired and the sentence did not contain any probationary period, which might, under certain circumstances, not of interest here, still give the Court jurisdiction over the petitioner. E. g., Frad v. Kelly, 302 U.S. 312, 315, 58 S.Ct. 188, 190, 82 L.Ed. ——.

A. In the case of United States v. Benz, 282 U.S. 304, 305, 306, 51 S.Ct. 113, 75 L.Ed. 354, Mr. Justice Sutherland said in describing the problem before the Court (italics mine):

"This case is here on a certificate from the court below under section 239 of the Judicial Code, as amended by the act of February 13, 1925, c. 229, 43 Stat. 936, 938, U.S.C., Title 28, § 346 (28 U.S.C.A. § 346). Benz was indicted for a violation of the National Prohibition Act (27 U.S.C.A.). He entered a plea of guilty and was sentenced to imprisonment for a term of ten months beginning December 27, 1929. While undergoing imprisonment under this sentence, and *before expiration of the term of the federal District Court which had imposed the sentence,* he filed a petition asking that the sentence be modified. The court, over the objection of the United States, entered an order reducing the term of imprisonment from ten to six months.

252

The government appealed, and the court below, desiring the instruction of this Court, certified the following question:

" 'After a District Court of the United States has imposed a sentence of imprisonment upon a defendant in a criminal case, and after he has served a part of the sentence, has that court, *during the term in which it was imposed,* power to amend the sentence by shortening the term of imprisonment?' "

The Court answered this question in the affirmative, emphasizing the fact that the modification of the sentence was possible only because it occurred *during* the term of the Federal District Court by which it had been imposed.

■ After its term has expired a Court loses jurisdiction of a case and cannot, even with the consent of the parties, modify or set aside any final judgment, decree or sentence which may have been imposed by it. United States v. Mayer, 235 U.S. 55, 58, 59, 67, 70, 35 S.Ct. 16, 59 L.Ed. 129; In re Metropolitan Trust Company, 218 U. S. 312, 320, 31 S.Ct. 18, 54 L.Ed. 1051; Phillips v. Negley, 117 U.S. 665, 674, 6 S. Ct. 901, 29 L.Ed. 1013; Ayres v. Wiswall, 112 U.S. 187, 190, 5 S.Ct. 90, 28 L.Ed. 693; Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797; Sibbald v. U. S., 12 Pet. 488, 9 L.Ed. 1167; Cameron v. McRoberts, 3 Wheat. 591, 4 L.Ed. 467.

B. Title 28 United States Code, § 178, 28 U.S.C.A. § 178, provides, with regard to the terms of the District Court for the Southern District of New York, as follows:

"Terms of the district court for said district shall be held at New York city on the first Tuesday in each month."

Here, as above noted, the plea of guilty was on January 6, 1931.

The General Rules of this Court read as follows:

"6. Extension of Terms.

"For the purpose of allowing bills of exceptions or of taking any other action in any cause which must be taken within the terms of the Court at which final judgment or decree is entered, each term of Court is extended for ninety days from the date of entry of the final judgment or decree."

The last date, therefore, on which this Court could have had jurisdiction to reduce the sentence here involved was ninety days from January 6, 1931, which, as I calculate it, would be April 6, 1931,—more than seven years ago.

The case of United States v. Richard Bieshuns,[1]—Criminal 91—53; Criminal 91—943—was not a case of the modification of a sentence after the term expired, but was a case in which on petition and on an order consented to by the United States Attorney, Judge Coxe made a clerical correction in a sentence and struck out a provision thereof which had not actually been imposed by the sentencing Judge but had been included in the sentence by an error of the Clerk.

■ This correction of a clerical error is something that can always be done when the fact that such an error exists is made out; but is not in any respect a precedent for the relief here sought.

■ VIII. But quite aside from the question of loss of jurisdiction, there is a second and equally conclusive reason why the petition should not be granted, even if the Court had jurisdiction to deal with it. For by pleading guilty to an indictment containing, as here, a number of counts, the defendant not only has waived all objections as to the form of the indictment,—Nicholson v. United States, 8 Cir., 79 F.2d 387, 389; Oesting v. United States, 9 Cir., 234 F. 304, 306, certiorari denied 242 U.S. 647, 37 S.Ct. 241, 61 L.Ed. 544; United States v. Bayaud, 16 F. 376, 383, 384, C.C., So. Dist. of N.Y.; but also has waived his constitutional right to claim double jeopardy, if any, involved therein, Brady v. United States, 8 Cir., 24 F.2d 399, 404; Levin v. United States, 9 Cir., 5 F.2d 598, 600, 601, certiorari denied 269 U.S. 562, 46 S.Ct. 21, 70 L.Ed. 412; as well as, of course, his constitutional right to a jury trial. West v. Gammon, 6 Cir., 98 F. 426, 428.

IX. There is, therefore, no basis on which the petition can be entertained by this Court, and, accordingly, it is in all respects denied.

---

[1] No opinion for publication.