No. 35,892

THE STATE OF KANSAS, *Appellant*, v. MRS. CECIL CARTE (Whose Real Name is KATHERINE CARTE), *Appellee*.

(138 P. 2d 429)

Opinion filed June 12, 1943.

*Pat Warnick,* of Wichita, argued the cause, and *A. B. Mitchell,* attorney general, *L. M. Kagey, Carl O. Bauman, Fred M. Field* and *Roy L. Rogers,* all of Wichita, were on the briefs for the appellant.

*Clarence R. Sowers,* of Wichita, argued the cause, and *Claude E. Sowers,* of Wichita, was on briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: We are asked to determine whether, under the facts presently to be stated, a trial court, after sentencing a defendant on three separate counts in an information had the power, during the term at which the sentence was imposed and after the defendant had begun serving the sentence, to reduce the sentence by setting aside and vacating the sentences as to the second and third counts. The appeal is by the state from the attempted exercise of such power.

On October 11, 1942, a car driven by the appellee, Mrs. Carte, struck another car at a highway intersection about five miles north of Wichita, Kan., three persons in the other car being instantly killed by the collision. Information was issued by the county attorney charging her on three counts with manslaughter in the fourth degree, under G. S. 1935, 21-420, which reads as follows:

"Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

The three deaths constituted the basis for charging the defendant on three counts—each of the three deceased persons being named in a separate count. In all other particulars the three counts were identical.

The case came on for trial on January 27, 1943, and a jury was impaneled. After the state had introduced some evidence the defendant entered a plea of guilty on each of the three counts and was thereafter sentenced on each of the three counts to the State Industrial Farm for Women, at Lansing, Kan., "to be there confined according to law," the three sentences to run consecutively.

The penalty in this state for manslaughter in the fourth degree is "confinement and hard labor for a term not exceeding two years, or by imprisonment in the county jail not less than six months" (G. S. 1935, 21-423).

Following the pleas of guilty counsel for the defendant argued to the trial court that only one offense had been committed by the defendant; that plea of guilty on the first count barred prosecution on the second and third counts, being second jeopardy for the same offense, and that such second and third pleas were wrongful because she had been wrongfully charged on such counts. The trial court did not agree with the defendant's contention and commitment was regularly issued by the clerk the same day, January 27, directing the sheriff to take the prisoner to Lansing. There was no formal motion to withdraw the pleas on the second and third counts, no motion for a new trial, and as far as we are advised, no notice of appeal to this court from the sentences on the second and third counts. On the next day, January 28, the sheriff was directed by the court to proceed with the prisoner to Lansing and apparently he complied at once. However, four days later, on February 1, the court reopened the case upon its own motion and the following journal entry shows what then transpired:

"Now on this 1st day of February, A. D. 1943, the above-entitled matter comes on for hearing upon the request of the Court before whom this case was tried, the Hon. Lloyd Kagey, deputy county attorney, appearing on behalf of the State, and Hon. Clarence R. Sowers appearing on behalf of the defendant.

"The Court, being fully advised in the premises finds that an erroneous sentence has been imposed and that the said defendant should be brought back within the jurisdiction of this court for proper sentence.

"It is therefore by the Court, ordered, adjudged and decreed, that the sheriff of Sedgwick county, Kansas, bring the defendant, Mrs. Cecil Carte, otherwise known as Katherine Carte, from the Kansas State Industrial Farm for Women at Lansing, Kansas, to Sedgwick county, Kansas, and confine said defendant in the county jail of said county, until such time as the Court may enter a proper sentence.                                 ROBT. L. NESMITH, *Judge*.

O. K. L. M. KAGEY, *Attorney for State*.

O. K. CLARENCE SOWERS, *Attorney for Defendant*."

The prisoner was brought back from Lansing and the matter again came on for hearing on February 10. Pertinent excerpts from the record then made are as follows:

"The Court: On the 27th day of January, 1943, you entered a plea of guilty to the first count as charged in the information and you were sentenced to the Kansas State Industrial Farm for Women at Lansing, Kansas, to there

be confined as provided by law, that sentence will remain. The sentence the court imposed upon your plea of guilty to the second count will be set aside. Do you wish to withdraw your plea to that count? (Tr. 1.)

Mr. Sowers: Yes, sir.

The Court: Very well. The defendant may withdraw her plea to the second count of the information. The court will also set aside the sentence upon your plea of guilty to the third count of the information. Does the defendant desire to withdraw her plea to the third count?

Mr. Sowers: Yes, sir, she does.

The Court: She may do so. And the statement of the court that the sentence on the three counts will run consecutively will be stricken from the record. That will be all.

Mr. Warnick: The Court please. Comes now the state of Kansas and objects to the ruling of the court as it relates to the changing of the journal entry of judgment and the judgment of the court at this time and objects to the ruling of the court with reference to the judgment hereinbefore imposed in this case.

The Court: Do you wish to reserve the question?

Mr. Warnick: When the court rules on that objection. (Tr. 2.)

The Court: The objection will be overruled.

Mr. Warnick: We would like to reserve the question; and if the defendant, Mrs. Cecil Carte, withdraws her plea to the second and third counts, her plea of guilty, the state requests that she be held here in this county for trial on the second and third counts.

The Court: It will be overruled as to all of your request, except the reservation of the question.

Mr. Warnick: The state desires to reserve the question on the last ruling.

The Court: You may do so. (Tr. 3.)"

The journal entry conformed to the above proceedings. Thereafter and on the same day, February 10, a new commitment was issued and the prisoner was returned to Lansing. This appeal by the state followed.

The state's three specifications of error may be summarized as follows:

1. The court erred in ordering the defendant returned from Lansing after she had been committed following pleas of guilty.

2. The court erred in setting aside the original judgment and sentence as to the second and third counts and permitting the defendant to withdraw her pleas as to such counts.

3. The court erred in overruling the state's motion that the defendant be retained in jail for trial on the second and third counts, after the pleas on those counts had been withdrawn.

In the first place we find nothing in the statutes which authorizes a trial court to order the return of a prisoner after he has begun

serving his sentence in the penitentiary. When a sentence has been pronounced it becomes the duty of the clerk to deliver forthwith to the sheriff a certified copy of the sentence, and the duty of the sheriff to take the prisoner, without delay, to begin serving the sentence. (G. S. 1935, 62-1518.) This was done by both clerk and sheriff. The state contends, and with force, that the subsequent action taken by the court amounted to the granting of a new trial, although no such motion had been made. Attention is called by the state to G. S. 1935, 62-1604, which provides that "the application for a new trial must be made before judgment," and to G. S. 1935, 62-1414, which provides that verdicts may be set aside, new trials or continuances granted "to either party in criminal cases for like causes and under the like circumstances as in civil cases."

We pass to the primary question of whether, in a criminal action, a trial court has power within the term to set aside or modify the sentence and to impose a new sentence, after the first sentence has been partly served. This question was before us in the recent case of *Parks v. Amrine*, 154 Kan. 168, 117 P. 2d, 586. Briefly, the facts in the Parks case were that the defendant pleaded guilty to forgery in the second degree—which carries a penalty of from one to ten years in the penitentiary—and because of evidence of one prior conviction of a felony the sentence was doubled, as provided by statute. The defendant was taken to the county jail to await transportation to the penitentiary. Three days later—the delay being through no request or fault of the prisoner—he was again brought before the court, additional evidence received as to prior convictions, and the former sentence set aside and a sentence of life imprisonment imposed. We squarely held that the trial court had exceeded its powers and that the later sentence was unauthorized and void. Pertinent parts of the syllabus read as follows:

"Under our statute (G. S. 1935, 62-1518) a valid judgment and sentence in a criminal case is effective from the time it is rendered. . . . When a valid judgment and sentence has been rendered in a criminal case the court has no authority after the sentence imposed has been served, in whole or in part, to set it aside and hear additional evidence and impose a new sentence, even though this be done at the same term of court." (Syl. ¶¶ 1, 2.)

In the opinion in the Parks case the authorities generally were carefully reviewed and we need not again go over the same ground. No distinction was there drawn between a new sentence which increases and one which diminishes the sentence. The decision rested upon the broad principle that after the defendant had entered upon

the sentence the court no longer had jurisdiction to modify the sentence. Not only is the case controlling here, but we believe it lays down the only safe and sound rule to follow. If the door is opened in any case and in any degree to modification of a sentence after the execution of the sentence has begun, when may the right to open the door be denied and how wide may the door be opened? If the judge of the trial court, in pondering the case after the prisoner has begun to serve his sentence, concludes that he has erroneously admitted or excluded some evidence, if he concludes that he wrongly stated the law in one of his instructions to the jury, or in any one of countless other ways had committed trial error, or had perhaps been a little too harsh in the sentence imposed—shall he then be permitted to modify the sentence, or to bring the prisoner back for new trial? We can see only uncertainty, confusion, and the possibility of grave abuses in recognizing any such power after sentence has begun.

Refusal to approve the action of the trial court in this case—no matter how worthy the motive which prompted the action may have been—involves no denial of the defendant's rights. There were at hand many ways in which her present contention could have been properly presented. She could have moved to quash the information as to the second and third counts. She could have moved to dismiss as to those counts. She could have objected to introduction of evidence as to those counts. She did none of these things. On the contrary, she pleaded guilty to each of the three counts. In no way did she challenge the right of the state to try her upon the second and third counts until after the pleas had been entered. She filed no motion for leave to withdraw her pleas. She did not file motion for a new trial. She filed no notice of appeal from the sentences on the second and third counts.

There is no need here for any extended comment on the question of prior jeopardy. The general rule is that prior jeopardy is a matter of affirmative defense and must be raised by special plea. (L. R. A. 1917A, 1233, and extensive citation of supporting cases; 1 Wharton's Criminal Law 12th ed. p. 556). It is also well settled that the defense of prior jeopardy may be waived (22 C. J. S. 412; *Brady v. U. S.*, 24 F. 2d 399, 405, and many cases there cited; *Curtis v. U. S.*, 67 F. 2d 943, 948; *State v. White*, 71 Kan. 356, 360, 80 Pac. 587, and other Kansas cases there cited). Appellee's pleas of guilty to the second and third counts constituted such waiver

(22 C. J. S. 413; *Bracey v. Zerbst Warden*, C. C. A. Kan., 93 F. 2d 8; *U. S. v. Harrison*, D. C. N. Y., 23 F. Supp. 249, affirmed 99 F. 2d, 1017).

We may say, in conclusion, that reversal of the orders and judgment setting aside the original sentences on ,the second and third counts leaves the original sentences standing as to all three counts. We here express no opinion on the question of whether appellee's contention that the original sentence was void as to the second and third counts might be raised, at appropriate time, in a habeas corpus proceeding, or whether it could yet be raised by appeal from the original judgment and sentence.

The judgment of the trial court rendered on February 10, 1943, setting aside the sentences heretofore imposed on the second and third counts and permitting the defendant to withdraw her pleas as to such counts must be reversed, set aside and held for naught. It is so ordered.

HARVEY, J. (concurring specially): I concur in the opinion of the court and simply wish to express the view that the record before us does not present the questions: (1) Of former jeopardy, (2) whether the killing of three people, by culpable negligence, is a greater offense than the killing of one, or (3) the power of a court, with no statutory grant of authority, to reduce the sentence in a felony case after it has been served in part.

HOCH, J. (dissenting): The opinion in this case, written to express as accurately as possible the views of the majority of the court, does not represent my personal views. The reasons for my dissent will be stated.

Reversal of the lower court leaves the appellee under three sentences for one offense. I do not believe that she can justly be held responsible—under the facts shown by the record—for such a result or that the trial court exceeded its power in taking prompt action to correct what it rightly regarded as a serious error.

The issues here touch fundamental questions. Adequate treatment would require much more lengthy discussion and review of authorities than will here be indulged. I shall content myself with setting out the principal propositions involved, as I see them, with brief supporting citations. Clarity—and I hope brevity—may be promoted by first stating these propositions, topically.

1. The information showed clearly on its face that only one offense had been committed. The fact that three persons were killed—instantly killed—by the collision did not make the defendant chargeable with three separate offenses or acts of "culpable negligence," which is the gravamen of the offense under the penal statute solely relied upon.

2. Arraignment and plea on the first count constituted jeopardy, available as a bar to the second and third counts.

3. All the facts showing such jeopardy being an integral part of the very case being tried, it was the duty of the court itself, even without plea in bar, to quash the second and third counts. Indeed, it may well be doubted—although I shall not here discuss that question—whether under such circumstances the court had jurisdiction to proceed with the trial as to the second and third counts.

4. Under all the facts and circumstances shown by the record it cannot fairly be said that the defendant deliberately waived her defense of prior jeopardy.

5. If the sentences on the second and third counts were void, the court unquestionably had the power to set them aside. And whether void or merely voidable, the rule of law hereinafter stated in paragraph 7 with reference to power of the court to modify the sentence, is applicable.

6. Even if the illogical view be adopted that the defendant was guilty of three offenses, three acts of "culpable negligence" because three persons were killed in the accident, the rule stated· in paragraph 7 is still applicable.

7. On the question of the power of the court to modify, within the term, a sentence which has already gone into effect, distinction is made between modifications which *increase* the punishment and those which *decrease* it. Under the better-reasoned decisions—in my opinion—and perhaps the weight of authority, the rule is that the court *does not have power to increase* the punishment but *does have power to decrease it.*

8. On the facts there involved, the decision in *Parks v. Amrine*, relied upon in the majority opinion, is in line with the rule just stated. But it is not controlling here against appellee's contention because in that case we were not dealing with a new sentence which *mitigated* the punishment but with an attempt to *increase* the term of a sentence which the defendant had begun to serve.

To retrace:

1. The information clearly disclosed only one offense committed. From the brief submitted by the state we take the following statement:

"*The three people who died by reason of the accident were killed instantly by reason of the contact of the two automobiles* involved in the accident. *There was only one accident which caused the deaths,* as hereinbefore stated, and the three counts as contained in the information in which the defendant was charged with manslaughter in each count grew out of the one collision." (Italics supplied.)

It must be conceded that there is conflict on the question of whether, when more than one person is killed by a single act, there is more than one offense. However, upon critical examination of the facts involved in the myriad of cases touching the question the apparent conflict in large part vanishes. I shall not extend this dissent by exhaustive analysis of cases. Clearly those cases where more than one blow was struck, more than one shot fired, more than one separate and distinct wrongful act committed, have no application here. The "culpable negligence" that resulted in the death of one of the three persons killed was precisely the same "culpable negligence" that killed the other two. The state does not contend otherwise. The three counts were identical, except for the name of the person killed.

Applying every intelligent test which I have anywhere found laid down to determine whether more than one offense was committed I can reach no conclusion except that one offense, and one only, was charged.

One test was enunciated by the United States Circuit Court of Appeals in *Curtis v. U. S.*, 67 F. 2d 943. In paragraph 12 of the headnote it is said that a "test of identity of offenses, as respects pleas of *autrefois acquit* is whether same evidence is required to sustain them." In the instant case precisely the same evidence would be required on all three counts to sustain the charge of culpable negligence. It is not contended otherwise.

Many courts have applied the test of whether the facts and circumstances indicate a *single* or a *multiple intent.* Such a test at once distinguishes such cases as those suggested in the state's brief in which a man deliberately shoots a gun into a crowd, or where he poisons a drinking-water well. In such cases more than one offense might be charged because the defendant would be presumed to have intended the natural result of his act—the killing of more than one

person. It would be a case of "multiple intent." We have no such situation here.

In the well-considered case of *State v. Wheelock* (1933), 216 Iowa 1428, 250 N. W. 617, this test of "singular" or "plural" intent was ably discussed. The case was "on all fours" with the case at bar. Three persons were killed in an automobile collision through the negligence of the defendant. Many cases were carefully analyzed in the opinion. The conclusions were summarized as follows:

"Our opinion herein shall go no farther than to determine whether an involuntary manslaughter of two or more persons attributable to the single negligence of the defendant, without any intent on his part to cause any injury, is a single or a multiple offense. If the respective courts differ in their conclusions in cases involving other offenses, *such difference arises nevertheless on the question of fact as to whether the intent of the perpetrator was single or plural.* In the case before us there is no basis for the claim of multiple intent either as a question of fact or of law. *In the careful research of counsel for the state, no manslaughter case has been found to support its contention.* All the cases which involve manslaughter speak with one voice on this subject. Though this court has had no occasion to pass upon the question in a case of manslaughter, its holding in the cases above cited is clearly consistent with the holdings in the manslaughter cases cited herein.

"*In line with all the other courts, which have passed upon the specific question, we now hold only that an act of negligence on the part of a tort-feasor, which results in the involuntary killing of two or more human beings, is ordinarily a single offense and is subject to one prosecution.*" (Italics supplied.) (p. 1448.)

The state cites no decision of this court, and we know of none, which is authority for the contention that three offenses were committed. On the contrary, all Kansas cases in point noted in my research support or tend to support the proposition that only one offense was committed. *State v. Johnson,* 70 Kan. 861, 79 Pac. 732, goes even further in some respects than the rule here supported. In that case the defendant was charged with an assault upon two named persons "with certain deadly weapons, to wit, large-bladed knives and clubs and an umbrella," with an intent to kill them. It was held that only one offense was charged. In *State v. McLaughlin,* 121 Kan. 693, 249 Pac. 612, the defendant was convicted of two offenses—being drunk on a public highway and operating an automobile while drunk. This court reversed the judgment and directed the trial court to require the state to elect upon which count it would stand. It was said in the opinion—which cited *State v. Colgate,* 31 Kan. 511, 3 Pac. 346, and other former Kansas cases

—that being drunk on the highway was an essential element in the act of driving a car on the highway while drunk, and that "two distinct penal offenses cannot be carved out· of that single and identical delinquency." In the instant case the state succeeded in carving *three* offenses out of a "single and identical delinquency." In our latest case touching the question, *State v. Phelps,* 153 Kan. 337, 110 P. 2d 755, two persons were killed and the information contained two counts. A sentence for a single offense only was imposed, although the court had refused to instruct the jury that the defendant could only be found guilty on one count. We refused to reverse because of such refusal, stating that since only one sentence had been imposed the defendant had not been prejudiced by refusal to give the instruction.

In *State v. Taylor,* 138 Kan. 407, 26 P. 2d 598, the defendant had fired two shots and two people were wounded. We said:

"Conceding, without deciding, that if he had fired but one shot and the bullet had wounded his two victims his act would have constituted but a single offense," etc. (p. 414.)

The opinion went on to say that separate shots do not constitute a single offense where two persons "are wounded *by separate shots,* fired in quick succession, although the circumstances leading up to the affray may have been identical." (Italics supplied.)

2. If the trial on the first count constituted trial on the one offense charged in the information it must, of course, be conceded that the defense of prior jeopardy became available as to the other two counts.

3. It is true, as stated in the court's opinion, that the ordinary rule is that the defense of prior jeopardy must be specially pleaded. But it has been held by many courts that this rule does not apply where the record itself discloses the facts—brought to the attention of the court—showing prior jeopardy. Under such circumstances a special plea containing these facts would be unnecessary and superfluous. (For discussion of this exception to the rule, and supporting cases, see L. R. A. 1917A, pp. 1234-1237; 1 Wharton's Criminal Law, p. 556, note 20.) In *Robinson v. State,* 21 Tex. App. 160-162, 17 S. W. 632, it was said—after recital of the general rule that prior jeopardy must be specially pleaded—

"Was it necessary in this case that defendant should have specially pleaded his former acquittal of aggravated assault? We think not. Both trials were had in the same tribunal and upon the same information. Judicial cognizance

should have been taken of the previous action of the court, and what had transpired therein with regard to the case, and especially such proceedings as appeared of record in the case. . . . In such case the court is bound to take cognizance of the facts, they are a part and parcel of the case before the court, and the defendant is not required to plead them."

This court has given definite sanction to the exception in *State v. White,* 71 Kan. 356, 357, 80 Pac. 589, the pertinent syllabus of which reads:

"Ordinarily former jeopardy must be pleaded in bar of further prosecution, and such plea must be interposed upon arraignment, before pleading to the merits. If, however, upon a second trial of the same action it be claimed that the accused was put in jeopardy by the first proceeding, and the record itself discloses all the facts, they need not be pleaded anew, nor proved *aliunde.* Upon the question's being raised the court will take cognizance of such facts from the record, and determine their proper legal effect as if upon demurrer to a plea reciting them." (¶ 2.)

That is precisely the situation here presented.

4. Can it fairly be said that the appellee deliberately waived the defense of prior jeopardy when she entered a plea of guilty to the three counts of the information? I do not think so. Immediately after the plea had been entered counsel raised the issue and urged it upon the court. Perhaps counsel should have formally moved for leave to withdraw the plea. But on such a fundamental, constitutional issue I do not think we should insist upon a particular procedure. What was done was in substance tantamount to motion to withdraw. It had no other significance. And when the court took the position that three offenses were involved should defendant then have withdrawn her pleas and forced a trial on the second and third counts? Possibly so, but in my opinion we cannot justly, under the circumstances, hold that her failure to do so forever precluded her from raising the question. Furthermore, she had pleaded guilty to "culpable negligence" in her plea to the first count. What would it have availed her to plead not guilty on the other two counts which involved the same facts?

5, 6. Only brief comment is necessary. If the sentences on the second and third counts were *void* for reasons heretofore stated, unquestionably the court had power to set them aside. (24 C. J. S. 120 and cases cited.) I say that the court would not only have the power, but the duty to do so. If the sentences were *voidable* only then the court still had power to set them aside under the authorities presently to be cited.

7, 8. These will be discussed together.

As already indicated, I have no quarrel with the decision in *Parks v. Amrine,* supra, as applied to the facts there involved. The rule there stated, however, is broader than required by the facts of the case and should not be applied to an essentially different situation such as we have here. The *Parks* case dealt with an attempt to *increase* the punishment and the authorities cited in the opinion deal almost wholly with cases of that sort. In most cases the generalizations quoted are specifically so conditioned. 15 Am. Jur. 128 was cited and I quote a pertinent sentence from the quotation:

"He *cannot,* however, set aside a sentence and *impose a new or different sentence increasing the punishment* after the defendant has entered upon the execution of a legal sentence." (Italics supplied.)

On the page following this excerpt from American Jurisprudence it is specifically stated (p. 131) that there is a conflict on the question of whether during the term the judgment may be modified, after the execution of the sentence has begun, *"by reducing* the punishment."

Again, the opinion in the *Parks* case quotes a general statement from 24 C. J. S. 118. On the following page, 24 C. J. S. 119, it is said:

"Moreover, it is the rule in at least some jurisdictions that where a sentence has been partly executed, it may be revised and another in *diminution or mitigation* substituted for it during the term. The basis for the allowance of a diminution of punishment, while denying the court's power to increase it, is held to lie in the fact that in the latter case accused would be subject to double punishment for the offense."

Again, in the *Parks* opinion the general rule is quoted from 16 C. J. 1314. But following the quotation given is the following:

"It has been held, however, that where a sentence has been partly executed it may be revised and another in *diminution* or *mitigation* substituted for it during the term." (16 C. J. 1315.)

Eight Kansas cases were cited in the *Parks* opinion and all were persuasive on the issue being considered, but careful examination discloses that every case touching the issue involved efforts to *increase* the sentence. Indeed, in *State v. Meyer,* 86 Kan. 793, 798, 122 Pac. 101, one of the cases cited, the court specifically declined to broaden the rule beyond that, saying:

"We need not determine the effect of a modification which *remitted a part of the penalty or shortened the term of imprisonment,* at the instance of the defendant," etc. (Italics supplied.)

One of the early cases generally relied upon in support of the view that the sentence cannot be modified, either by increasing or decreasing the punishment, is *Ex Parte Lange,* 18 Wall 163, 167-174; 21 L. Ed. 872, 876-878. But in the comparatively recent case (1930) of *U. S. v. Benz,* 282 U. S. 304, 75 L. Ed. 354, the United States supreme court discussed the Lange case at length for the purpose of showing that it had been misinterpreted, and squarely held that—

"The power of a court to amend a sentence of imprisonment during the term of court in which it was imposed, *by shortening the period of imprisonment, continues after service of the sentence has been begun."* (21 L. Ed. 872, headnote 1.) (Italics supplied.)

The whole question is thoroughly examined in the opinion in the *Benz* case and the holding is clean-cut and unequivocal. Many passages from the opinion might well be given. I quote only the following:

"The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified or vacated by that court. . . . The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. . . . In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation. . . .

"The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the fifth amendment to the Constitution." (pp. 306, 307.)

Admittedly, federal decisions, including those of the supreme court, are no more binding upon us, upon such questions, than are those of other state courts. But the opinion in the Benz case is not based upon any particular provision of federal statute, and what is there said as to the power of courts is equally applicable in principle and reasoning to state courts.

I shall not discuss the contention that the trial court was without statutory authority to order the defendant brought back from Lansing. It did issue such order and the warden honored it. Whether that was irregular or not is not now a controlling issue. The fact is, she was brought back, was in court, and I am firmly convinced that the trial court did not exceed its powers in the action it then took.

Is the appellee now left without recourse? With no intention of

prejudging such a question—not now directly before us—I simply call attention to some obvious difficulties—surmountable, it may be —to fortify the thought that the instant judgment should not be reversed except for the most compelling reasons.

If the defendant may yet appeal from the original judgment what might be said upon review about her plea of guilty? If she waived her defense of second jeopardy, is not such defense still waived upon appeal? And if the trial court had no power to modify the sentence might we say that it erred in not doing so? And as to habeas corpus proceedings—which in any event could only be brought after she has completed her sentence on the first count—what about the contention that the general rule is that the defense of prior jeopardy must be raised upon appellate review and is not available in a habeas corpus proceeding? (15 L. R. A., n. s., 227, 233.)

In conclusion, I do not share the fears expressed in the court's opinion that dire results may flow from adoption of the rule followed by all federal courts and in many state jurisdictions. The power to reduce the sentence is limited to the term and appellate review still exists. Similar power to modify in civil actions of far-reaching consequence is universally recognized. Besides, the protection of a great constitutional guaranty—a thorough-going protection which looks through form to substance—should weigh heavy in the scales.

SMITH, J., concurs in the foregoing dissenting opinion.