No. 35,989

THE STATE OF KANSAS, *Appellee*, v. MRS. CECIL CARTE (whose real name is Katherine Carte), *Appellant*.

(143 P. 2d 774)

674

*Clarence R. Sowers* and *Claude E. Sowers,* both of Wichita, were on the briefs for the appellant.

*A. B. Mitchell,* attorney general, *Pat Warnick,* county attorney, *L. M. Kagey, Carl O. Bauman, Fred M. Field, Lee R. Meador, Roy L. Rogers* and *Howard C. Kline,* deputy county attorneys, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by the defendant from a judgment of sentence imposed in a manslaughter case. The single error urged is the sentence was excessive and we are asked to set it aside. The question presented turns upon whether appellant can be heard to contend now, as a matter of law. that she was improperly sentenced on three counts instead of one.

The defendant, Mrs. Cecil Carte, whose real name is Katherine Carte, was charged in an information under three separate and distinct counts of manslaughter in the fourth degree pursuant to G. S. 1935, 21-420 of our crimes act, which provides:

"Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

Three persons were killed instantly as a result of a collision between appellant's car and the car occupied by the deceased. The counts were framed in identical language except as to the names of the persons killed. In other words, the theory of the prosecution plainly was that three separate and distinct offenses had been committed by the act, procurement or culpable negligence of appellant. On the charges thus contained in the information appellant went to trial. She filed no motion to quash any count on the theory of duplicity or for any other reason. She did not object to the introduction of evidence on any count.

A stipulation entered into by the parties and filed in this court discloses: The state introduced its evidence on all three counts and rested; thereafter appellant entered a plea of guilty on each of the three separate counts and was sentenced on each of the three counts, the judgment being that the three sentences were to run consecutively; both before and after her plea of guilty on the three separate and distinct counts, her counsel contended:

Only one offense had been committed; the plea of guilty on the first count barred prosecution on the second and third counts, being second jeopardy for the same offense; the second and third pleas were wrongful because she had been wrongfully charged on those counts.

With that contention the trial court did not agree, but after the sentence had been executed the court took a different view of the matter. The later action of the trial court is reflected in a former opinion of this court which involved an appeal by the state from the subsequent judgment of the trial court. (*State v. Carte*, ante, p. 139, 138 P. 2d 429.)

The instant appeal, as previously stated, was taken by defendant from the judgment and sentence pronounced on her plea of guilty to the three separate and distinct offenses charged. The record in the former appeal disclosed her contention that only one offense had been committed was made *after* her plea of guilty. In the instant appeal it is stipulated the contention was made both *before* and *after* her plea of guilty. There were two journal entries but neither of them discloses such contention was made at any time. The practice of parties stipulating concerning matters which do not appear in journal entries without disclosing a proper and unsuccessful attempt to have the desired facts embodied in the journals cannot be approved. It is unfair to a trial court and in other respects is not conducive to the orderly administration of justice. We have seldom encountered evidence of such a practice but if it is continued we shall be required to deal more drastically with the subject. We shall pass the matter without further comment in this case but we do so only by reason of the conclusion we are obliged to reach on the merits of the appeal irrespective of the discrepancy in the record. It is not our intention to intimate counsel for the parties in this case have untruthfully stipulated concerning the actual facts in the case. Our condemnation pertains to a practice which this court cannot countenance.

Assuming the contention of former jeopardy was also advanced, as stipulated, namely, after the state had rested its case but *before* appellant entered her plea of guilty on each count, that fact does not aid her position. On the contrary, it clearly discloses that although she had made the contention before entering her plea on each count, such contention, for all practical purposes, was effectually abandoned when she thereafter entered her plea of guilty to the three offenses as charged. (*People v. Strickler,* 167 Cal. 627, 140 Pac. 270; see, also, 22 C. J. S., Criminal Law, § 277.)

The question presented is, assuming appellant is correct in her contention that the second and third counts constituted charges of the same offense contained in count one, did she waive the defense of former jeopardy? That a person may be tried and convicted more than once for the commission of the same identical offense unless he exercises his constitutional right and privilege to object to being twice put in jeopardy for the same offense is, of course, well established. (*State v. White*, 71 Kan. 356, 80 Pac. 589; *State v. Ford*, 117 Kan. 735, 232 Pac. 1023; *State v. Maxwell*, 151 Kan. 951, 962, 102 P. 2d 109, 128 A. L. R. 1315; *State v. Carte*, ante, p. 139, 144, 138 P. 2d 429.)

In the Maxwell case the defendant had been discharged in a former trial as to a certain count which alleged the unlawful uttering of a check. The same identical count again appeared in the amended information filed before the second trial. In the course of the second trial the state introduced its evidence on that count without defendant objecting thereto. It was there said:

"The immunity from second jeopardy granted by the constitution to one accused of crime is a personal privilege which may be waived and which appellant did waive in the instant case." (p. 962.)

So in this case appellant could be tried and convicted repeatedly on the identical offense charged in the first count, or on any other separate count, if she did not avail herself of her constitutional right and privilege to enter a timely and appropriate plea of former jeopardy. Appellant contends the second and third counts constituted the same offense as that charged in the first count. It follows, if appellant is correct in her contention that only one offense was committed, she clearly did not avail herself of her right to assert the plea of former jeopardy when the information was filed. She did not do so when the state undertook to establish her guilt on the second and third counts. After the state had rested its case appellant pleaded guilty to each of the offenses charged in the respective counts. She claims she also raised the claim of double jeopardy after her plea of guilty on each of the three counts. It is, however, admitted she filed no motion to withdraw her plea of guilty on counts two and three. Furthermore, both the journal entry of judgment and a later *nunc pro tunc* journal entry disclose that after her plea of guilty to each of the three offenses charged and before sentence was finally pronounced thereon, appellant was expressly informed by the court that she had been charged with three counts

of manslaughter in the fourth degree and that the court inquired whether she had any legal cause to show why judgment of sentence should not be pronounced against her and that she failed to assert any cause whatsoever. The stipulation is not to the contrary.

In accordance with her plea of guilty to each of the three offenses charged, appellant was sentenced. The sentences were made to run consecutively. In view of these circumstances we have no hesitancy in concluding appellant waived the defense of former jeopardy, assuming she actually had such a defense.

It is always well to bear in mind the clear distinction between the subjects of sentence and former jeopardy. Judgment of sentence can be pronounced only after a person has been put on trial and after he has been convicted of, or has pleaded guilty to, the offense or offenses charged. Section 10 of our bill of rights, insofar as pertinent here, provides:

"No person shall be twice *put in jeopardy* for the same offense." (Emphasis supplied.)

It will be observed the protection afforded by this provision is not against the peril of second sentence or punishment but against being put on trial again for the same offense. (*The People v. Allen*, 368 Ill. 368, 383, 14 N. E. 2d 397.) Having waived the defense of former jeopardy, assuming she had such a defense, sentence was properly imposed on the plea of guilty to each offense charged and the sentence cannot be set aside now.

Appellant finally contends the court did not have jurisdiction to render the judgment of sentence it rendered. The contention is not good. The court had jurisdiction of the parties and the subject matter. Its jurisdiction did not depend upon whether it rendered a right or wrong judgment.

In view of what has been said it follows the judgment of sentence must be affirmed. It is so ordered.

WEDELL, J. (concurring): I concur in the views expressed in the opinion of the court on the subject of waiver of former jeopardy. I also concur entirely in the view that the question of waiver of former jeopardy is the only issue which the court is compelled to determine in this appeal. In view, however, of the closely related subject of identity of offenses, and also by reason of the fact that appellant under the judgment rendered is required to serve the three sentences consecutively, I prefer to state frankly some of my views on the subject of identity of offenses.

At the outset it candidly should be conceded that on the general subject of identity of offenses the decisions are in great, if not hopeless, conflict. Touching, however, the factual situation presented in the instant case, it is my opinion the weight of modern authority is that three separate and distinct offenses were committed by the same act of culpable negligence. Irrespective, however, of where the balance of the weight of authority may rest, I am persuaded the better reasoning compels that view.

With respect to the subject of second jeopardy it is clear that confusion of thought and hence conflict in decisions has resulted from a failure to properly distinguish between the *act*—in this case the culpable negligence—and the completed offense—in this case the killing of an individual. The constitution does not prohibit putting a person in jeopardy twice for the same *act*. It gives the citizen immunity from being put in jeopardy twice for the same *offense*. Two things, not one, are necessary to constitute the offense in this case. The first is the *act* of culpable negligence. The second is the killing of a person. Until the second thing occurs, no offense has been committed. The correct principle was accurately stated in *The People v. Allen,* 368 Ill. 368, 14 N. E. 2d 397, as follows:

"Our constitution commands that no person shall be twice put in jeopardy for the same offense. A distinction obtains between an offense and the unlawful act out of which it arises. The act is the cause of the offense which, conversely, is the result of the act. The constitutional inhibition is directed to the identity of the offense and not to the act." (p. 378.)

The test of identity of offenses is whether proof of the facts alleged in one count will necessarily constitute proof of the offenses charged in another count, or counts, of the information. (*The People v. Allen,* supra.) Manifestly proof of the death of "A" charged in count one would not necessarily constitute proof of the death of "B" or "C" charged in counts two and three. It follows that no verdict or plea of guilty on count one would support a judgment of sentence on the offense charged in counts two or three. No acquittal on the charge contained in count one for the killing of "A" would necessarily constitute an acquittal for the killing of "B" or "C," charged in counts two and three.

In *State v. Ragan,* 123 Kan. 399, 256 Pac. 169, this court, following its former decision in *State v. Schmidt,* 92 Kan. 457, 140 Pac. 843, held:

"In criminal cases the ultimate test applied in determining the validity of

a plea of former conviction or former acquittal is identity of offenses, and it is not necessarily decisive that the two offenses may have some material fact in common." (Syl. ¶ 2.)

In the course of the opinion in the Ragan case the court stated:

"If the facts which will convict upon the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offense charged may have been committed under the same state of facts. (8 R. C. L. 143, 144.) A putting in jeopardy for one act is not a bar to a prosecution for a separate and distinct act, merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for the one of them first had. Consequently a plea of former jeopardy will not be sustained where it appears that in one transaction, two distinct crimes were committed. (8 R. C. L. 151.)" (p. 401.)

See, also, *State v. Finney,* 141 Kan. 12, 25, 40 P. 2d 411.

The views heretofore stated are in harmony with well-reasoned decisions and carefully guarded statements of principle as reflected by opinions in the following cases dealing with automobile collisions: (*State v. Fredlund,* 200 Minn. 44, 273 N. W. 353, 113 A. L. R. 215 [1937], Anno. 113 A. L. R. 222; *Fay v. State,* 62 Okla. Cr. 350, 71 P. 2d 768 [1937]; *The People v. Allen,* supra, [1938]; *Fleming v. Commonwealth,* 284 Ky. 209, 144 S. W. 2d 220 [1940]). This list of cases is not intended to be exhaustive. In the cases cited are contained many decisions from the states of California, Ohio, South Carolina, Vermont and perhaps a few other states which have applied the same principle to similar factual situations. In the Minnesota case, it was held:

"Before a defendant may avail himself of the plea of former jeopardy it is necessary for him to show that the present prosecution is for the identical act *and that the crime* both in law and in fact was settled by the first prosecution. (Emphasis supplied.)

.   .   .   .   .   .   .   .   .   .   .   .

"It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy. Where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses." (Syl. ¶¶ 2, 5.)

In the Illinois case it was held:

"A distinction obtains between an offense and the unlawful act out of which it arises, it being possible that two or more distinct offenses may grow out of the same transaction or act, and the rule that a person cannot be twice put in jeopardy for the same offense has no application where two separate and distinct crimes are committed by one and the same act, as the constitutional

inhibition is directed to the identity of the offense and not to the act." (Syl. ¶ 2.)

In the course of the Minnesota opinion it was stated:

"In view of present-day conditions, where murderous gangs by means of high-powered machine guns, sawed-off shotguns, and the like often cause death to our citizens, and where great bodily injury or death to many may be the result of a single discharge of such weapons, it would indeed be a sad condition of affairs were we to give a narrow construction to the state's right to protect its people. The maxim for which defendant contends was not designed to foster crime but to protect the accused from double jeopardy where in point of *fact* the criminal *act* caused a particular individual the harm against which the law is directed. Obviously, we think, it was not intended to be a shield for the murderer behind which he may hide. Other illustrations can easily be made. Thus one might poison a well from which many persons might die because the water therefrom was used by many persons residing in that locality. One might throw a bomb into a large crowd of people and thereby injure many and possibly kill several. Is it reasonable that such well poisoner and bomb thrower should be held immune to prosecutions for the death of his other victims because on the trial of one so killed he was acquitted? The answer is obvious. No reasonable person would be likely to consider such a result possible." (p. 54.)

So in the instant case the culpable negligence with which defendant was charged in propelling her vehicle into the vehicle of another, if established—and it was by her plea—disclosed an utter disregard for the life of each and every individual who occupied the latter car. No one would contend the death of each of the three persons caused by appellant's single act of culpable negligence would form the basis of only one civil liability and that it would constitute only one cause of action for damages. No one would contend that a money judgment recovered from appellant by the administrator of the estate of one of the deceased persons would constitute a bar to a similar action by the administrators of the estates of other persons who were killed instantly by means of the same identical negligent act. (*State v. Fredlund*, supra, p. 50.) No valid basis exists, it seems to me, for declaring that the death of three persons by the same negligent act constitutes three separate and distinct causes of action for civil liability but only one offense against society. Three separate and distinct rights to live have been invaded and destroyed. Three wrongs, three separate and distinct offenses, have been committed. In the Illinois case the principle was aptly stated thus:

"A conviction or acquittal under one charge is a bar to a prosecution for another crime growing out of the same act only where the offense for which

the accused was tried and acquitted or convicted is but one of the degrees of the same offense for which it is later attempted to put him on trial. (*People v. Fox*, supra.) In order for one prosecution to be a bar to another it is not sufficient to show that the act is the same, but it must be shown that the offense, also, is the same in law and in fact." (p. 380.)

Appellant contends the following Kansas cases are authority for the view that only one offense was committed or that they at least tend to support that view: (*State v. Taylor*, 138 Kan. 407, 26 P. 2d 598; *State v. Phelps*, 153 Kan. 337, 110 P. 2d 755.) Some other similar decisions of our own might be cited. For my present purposes it is unnecessary to prolong this opinion by a detailed analysis of the facts involved in the various Kansas cases. In my opinion an analysis of our decisions will disclose this court has not definitely aligned itself with either view insofar as the subject of identity of offenses in this exact type of action is concerned. It has, however, definitely adopted the well-established general rule relative to the test of identity of offenses as previously indicated herein. An application of that principle to the facts in this case, in my opinion, clearly requires the conclusion that three separate and distinct offenses were charged in the instant information. I am persuaded appellant pleaded guilty to counts which charged three separate and distinct offenses. It follows the defense of former jeopardy would have been of no avail even if effectually raised and consistently maintained.

Hoch, J. (concurring): A majority of this court held, on the former appeal in this case (*State v. Carte*, ante, p. 139, 138 P. 2d 429) that the defendant had waived the defense of prior jeopardy. In a dissenting opinion my reasons for not concurring in that finding were briefly stated. Although my personal views on that question remain unchanged, I feel constrained to follow the court's prior holding and therefore concur in the instant decision.

Upon the prior appeal I was also unable to concur in the majority view that the trial court exceeded its power when it modified and *decreased* the sentence, within the term, after execution of the sentence had begun. Holding that view the question was then at issue, in my opinion, as to whether, upon the facts alleged and the admissions of the state, the defendant had committed one offense or three separate offenses under the statute upon which the prosecution was based. Briefly discussing the question I voiced the view that there had been only one offense. In a specially concurring and

forceful opinion, upon this appeal, Mr. Justice Wedell reaches a contrary conclusion.

It is not my purpose to unduly extend discussion of this question, since it is not treated in the court's opinion—the result being determined upon other issues. In view, however, of its importance, I am constrained to add a brief comment to what was said in the prior dissenting opinion.

The defendant was prosecuted under G. S. 1935, 21-420. "Culpable negligence" is the gravamen of the offense denounced by that statute. Malicious or felonious intent is not involved in that statute. She was charged with driving her car on a country road at a speed "in excess of forty miles an hour" and failure and neglect to stop as required by a stop sign before driving into the intersection with a marked highway.

It is argued that because she would be liable in a civil action under the common law for damages and injuries to all persons resulting from her actionable negligence it logically follows that there were three criminal offenses because three persons were killed in the collision. I do not think it is as simple as that. If it is, then many courts have needlessly struggled with the question of single or multiple offenses resulting from a single act. In a civil action in tort attempt is made at restitution for losses sustained. Unfortunately, in a criminal action, brought by the state, restoration of a lost life cannot be made. A wholly different principle must be applied. Society can only seek to protect itself by punishment of the wrongdoer.

Admittedly there is wide conflict of authority on the question of single or multiple offenses growing out of a single act. I have no quarrel with the distinction drawn between *act* and *offense*. In the prior dissenting opinion I cited a few of the many authorities supporting the view adopted, and shall not burden this opinion with further citations.

One of the guiding tests invoked in many decisions is that of *single* or *multiple intent*, as shown by the facts of the particular case. This distinction is implicit in the illustrations used in the opinion in the Minnesota case of *State v. Fredlund*, 200 Minn. 44, from which my learned colleague quotes rather extensively. It was there said:

"Other illustrations can easily be made. Thus, we might *poison a well from which many persons might die* because the water therefrom was used by many

persons residing in that locality. *One might throw a bomb into a large crowd of people and thereby injure many and possibly kill,"* etc. (Italics supplied.) (p. 54.)

The distinction between such cases and the instant one is obvious. Not only is deliberate criminal intent present in such cases but such acts are committed either with deliberate intent to injure or kill *more than one person* or in utter disregard of the *probability* of such result. The opinion in the Minnesota case does not disclose just what the facts were but the indictments were under a Minnesota statute which reads:

"Such killing of a human being, when perpetrated by act eminently dangerous to others, *and evincing a depraved mind, regardless of human life,* although without a premeditated design to effect the death of any individual, or without a design to effect death, *by a person engaged in the commission of, or in an attempt to commit, a felony* either upon or affecting the person killed or otherwise, is murder in the third degree, and shall be punished," etc. (Italics supplied.) (p. 45.)

Assuming as we must that the facts brought the offenses within the statute the distinction between that case and the instant one is at once clear.

If the test of *single* or *multiple intent*—invoked under the well-established rule that a person is assumed to have intended the natural and probable result of his act—is a valid one in cases where malicious or felonious intent is the gravamen of the action, then, all the more, it seems to me, should the test apply where a defendant is charged with negligence, however grievous, and who would be a tort-feasor only, if it were not for specific statute making such negligence culpable and providing criminal penalty therefor.